## FERRELL v. KEEL.

### Opinion delivered October 15, 1912.

1. CONSTITUTIONAL LAW—CONSTITUTIONAL AMENDMENTS—CONSTRUCTION.—In determining the intention in framing an amendment to the Constitution, the court must keep in mind the Constitution as it existed before it was amended, the evil to be remedied by the amendment, and the amendment itself. (Page 383.)

2. SAME—AMENDMENT—IMPLIED REPEAL.—Repeals of constitutional provisions by implication are not favored, and, in order that a constitutional provision may be abrogated by an amendment to the Constitution, there must be an irreconcilable conflict between the purposes of the two provisions. (Page 387.)

3. STATUTES—ENACTING CLAUSE.—The Initiative and Referendum Amendment, in providing that the style of all bills shall be, "Be it enacted by the people of the State of Arkansas," referred only to bills initiated by the people under such amendment, and did not repeal section 19 of article 5 of the Constitution, which provides that legislative bills shall be styled, "Be it Enacted by the General Assembly of the State of Arkansas." (Page 387.)

4. DRAINS—CREATION OF DRAINAGE DISTRICT—CERTAINTY.—Act approved March 9, 1911 (Sp. & Priv. Laws 1911, p. 184), attempting to create the Village Creek and White River Levee District, was void for failure to define its boundaries with certainty. (Page 391.)

Appeal from Jackson Chancery Court; *Geo. T. Humphries*, Chancellor; reversed.

*McCaleb & Reeder* and *Jno. W. & Jos. M. Stayton*, for appellants.

1. The act is void because of the uncertainty of the boundaries of the district. 125 U. S. 345; 72 Ark. 126; 81 *Id.* 565; 42 Oh. St. 527; Cooley on Taxation (3 ed.) 225; 14 Cyc. 1030-3, 1039; Welty on Assessments, § 297; 35 Cyc. 844; 28 *Id.* 1123; 32 So. Rep. 27; 34 Ark. 224.

2. The enacting clause is void. There must be an enacting clause substantially as prescribed by the Constitution. Under the Initiative and Referendum clause, the style should be, "Be it enacted by the people of the State of Arkansas." This is self-executing and mandatory, and repeals § 19, art. 5, of our Constitution. 27 Ark. 284; 101 Ark. 437; 179 U. S. 251; 105 Pac. 106; 70 Ark. 25; 72 *Id.* 8; 76 *Id.* 32; 1 *Id.* 21; 26 *Id.* 265; 31 *Id.* 710; 9 *Id.* 270; 12 *Id.*

101; 51 *Id.* 534; 60 *Id.* 343; 26 *Id.* 534, 285; 76 *Id.* 309; 99 Pac. 427; 103 *Id.* 780; 104 Pac. 426; 72 Cent. L. J. 367, 237; 130 S. W. 692; 50 N. W. 1110; 106 Pac. 540; 73 Atl. 679; 124 S. W. 757.

The act is void.

*Stuckey & Stuckey* and *Morris M. Cohn*, for appellee.

1. The enacting clause is not void. The people did not pass this act, nor was it referred to the people. It was passed by the Legislature and became a law when approved by the Governor. It may be that all laws passed by the people should have the enacting clause as prescribed by Amendment No. 10, but the word "all" refers only to acts passed by the people, and not those passed under art. 5, § 18; 29 Ark. 42-3; 106 Pac. 540; 106 *Id.* 544; 109 *Id.* 821; 95 Ia. 435.

The amendment is not self-executing. 95 Pac. 435; 115 *Id.* 383; 98 *Id.* 149, 1111; 85 Ark. 89; 65 *Id.* 312; 60 *Id.* 325, 332; 34 *Id.* 501; 109 Pac. 478; 102 *Id.* 829; 67 S. E. 940; 95 S. W. 824; 121 Am. St. 967; 209 U. S. 211; 80 N. W. 143.

2. The description of the boundaries is sufficient. 48 Ark. 370; 52 *Id.* 107; 70 *Id.* 451; 96 *Id.* 410; 167 U. S. 548, 589-90; 180 U. S. 324, 342; 60 S. E. 75; 30 Cal. 467; 25 Cal. 296; 89 Pac. 275; 106 S. W. 815; 116 Ky. 441; 66 Me. 354; 144 Ky. 184; 107 S. W. 1121. *Falsa demonstatio non nocet.* 4 Enc. Law, 797; 4 *Id.* (2 ed.) 763, note 2; 52 Ark. 107; 84 *Id.* 257, 267; 167 U. S. 548; 147 N. Y. 675; 42 N. E. 344.

*F. S. Osborne, amicus curiae.*

[The regular judges being disqualified herein, this cause was tried before James H. Harrod, Joseph M. Hill, Joseph W. House, J. V. Walker, and James H. McCollum, special judges The opinion of the court was handed down by]

HARROD, Special Judge. The judges of the Supreme Court having certified to the Governor their disqualification to determine the validity of the enacting clause of the act involved in this suit, this special court was appointed by the Governor, under section 9 of article 7 of the Constitution, to determine this cause.

The General Assembly of this State, at the 1911 regular session, created the Village Creek & White River Levee District, by and act approved March 9, 1911. The commissioners

of the district organized, selected assessors and engineers, and proceeded to assess the lands of the district for the levee tax. Various land owners commenced suit in the Jackson Chancery Court to enjoin the proceedings. A demurrer was interposed to their complaint, and it was sustained, and, electing to stand on their complaint, their suit was dismissed, and they appealed to this court to reverse that decree.

The appellants urge here, among others, the following grounds for reversal:

*First.* That the act is void because its enacting clause is, "Be it enacted by the General Assembly of the State of Arkansas."

*Second.* That the boundaries of the district are so indefinitely described by the act that the land subject to the tax could not be definitely ascertained, and that the act was therefore void.

The style of the act in question is: "Be it Enacted by the General Assembly of the State of Arkansas." Is that style of bill or enacting clause valid since the adoption of the Initiative and Referendum Amendment? The amendment is as follows:

"That section 1, article 5, of the Constitution of the State of Arkansas be amended so as to read as follows:

"Section 1. The legislative powers of this State shall be vested in a General Assembly, which shall consist of the Senate and House of Representatives, but the people of each municipality, each county and of the State, reserve to themselves power to propose laws and amendments to the Constitution and to enact or reject the same at the polls as independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. The first power reserved by the people is the Initiative, and not more than 8 per cent. of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon.

"The second power is a Referendum, and it may be ordered (except as to laws necessary for the immediate preservation

of the public peace, health or safety) either by the petition signed by 5 per cent. of the legal voters or by the legislative assembly as other bills are enacted. Referendum petitions shall be filed with the Secretary of State not more than ninety says after the final adjournment of the session of the legislative assembly which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures referred to the people. All elections on measures referred to the people of the State shall be had at the biennial general regular elections, except when the legislative assembly shall order a special election. Any measure referred to the people shall take effect and become a law when it is approved by a majority of the votes cast thereon and not otherwise. The style of all bills shall be, 'Be it Enacted by the People of the State of Arkansas.' This section shall not be construed to deprive any member of the legislative assembly of the right to introduce any measure. The whole number of votes cast for the office of Governor at the regular election last preceding the filing of any petition for the initiative or for the referendum shall be the basis on which the number of legal votes necessary to sign such petition shall be counted. Petitions and orders for the initiative and for the referendum shall be filed with the Secretay of State, and in submitting the same to the people he and all other officers shall be guided by the general laws and the acts submitting this amendment until legislation shall be specially provided therefor."

The amendment proposes to amend section 1 of article 5 of the Constitution. That section is as follows:

"The legislative powers of this State shall be vested in a General Assembly, which shall consist of the Senate and House of Representatives."

No other section or article of the Constitution of 1874 is mentioned in the amendment.

Section 19 (section 18, Kirby's Digest) of article 5 of the Constitution reads as follows:

"The style of the laws of the State of Arkansas shall be: 'Be it Enacted by the General Assembly of the State of Arkansas.' "

The question is, Was this provision of the Constitution

abrogated by the Initiative and Referendum Amendment? Is this specific provision of our organic law to be treated as no longer in force? It is claimed that it was annulled by this provision of the Initiative and Referendum Amendment: "The style of all bills shall be, 'Be it Enacted by the People of the State of Arkansas.'" So the question we are to consider involves the construction of the Initiative and Referendum Amendment in relation to the enacting clause of this act. Two constructions are open to the court. It may be held that section 18 is abrogated by the amendment, or it may be held that it remains in force as not affected by the amendment. The correct decision of the case involves nothing but the application of rules of law that must govern the court in the construction of the amendment. By what rules of law should we be governed? More than sixty years ago, in the case of *State* v. *Scott*, 9 Ark. 270, Mr. Justice WALKER, in a case involving the construction of an amendment to the Constitution, said: "In determining the intentions of the framers of the amendment, we must keep in view the Constitution as it stood at the time the amendment was made, the evil to be remedied by the amendment, and the amendment proposed, by which the evil is to be remedied. No interpretation should be allowed which would conflict with any other provision of the Constitution, or which is not absolutely necessary in order to give effect to the proposed amendment. On the contrary, such construction should be given as will, if possible, leave all the other provisions in the Constitution unimpaired and in full force."

These rules of construction were laid down at an early day, when the jurisprudence of our State was in its infancy; but none better have been proposed at any time or any place. Let us try this case by these rules of construction, and see what the result will be. How did the Constitution stand when the amendment was adopted? It provided that all legislative power was in the General Assembly (section 1 article 5), and that the style of all laws should be: "Be it Enacted by the General Assembly of the State of Arkansas." Section 19, article 5. Now, what was the evil the Initiative and Referendum Amendment was designed to remedy? It is well known that it was the failure of the legislative depart-

ment of the State government to respond to the will and wishes of the people. This failure sometimes took one form and sometimes another. Sometimes it was the failure or refusal to enact laws the people wanted; sometimes it was in passing laws the people did not want passed. Now, how were these evils to be remedied? By adding to existing legislative power the power of the people to pass the laws they wanted, and by diminishing the legislative power to the extent of permitting the people to pass upon and approve or reject laws enacted by the General Assembly. The evil to be remedied was not the style of the bills, but the substance of the bills. The people were not especially concerned with the style of enacting clause, but they were profoundly interested in the provisions of the laws. The Initiative and Referendum Amendment was not intended to interfere with the ordinary processes of legislation, nor was it intended in any manner to entirely abolish the legislative power of the General Assembly. It was intended as a supplement to the existing legislative power, on the one hand, and as a curb or restraint on that power, on the other hand. The amendment was not intended in any sense as an abandonment of representative government, but, rather, its very aim and purpose was to make government representative.

In construing this amendment, it is our duty to keep constantly in mind the purpose of its adoption and the object it sought to accomplish. That object and purpose was to increase the sense of responsibility that the lawmaking power should feel to the people by establishing a power to initiate proper, and to reject improper, legislation. If the adoption of this amendment creates in the minds of senators and representatives a true sense of their responsibility to the people, and thereby makes the legislative department of the government truly representative, its wise and beneficent purpose will have been accomplished if no bill is ever initiated and no legislative act is ever referred. But, a new method of legislation being provided for by the amendment, that is, the right of the people to initiate legislation, it became both important and necessary that the style of laws enacted by the people should be provided for in the amendment. Was the style of any bills or laws except those to be initiated by the people contemplated,

considered, or in any manner thought of, by the framers of
the Initiative and Referendum Amendment? Why should
we suppose that they were thinking of anything else except
the business they had in hand? The business they had in
hand was to establish a power in the people to legislate and
to provide a manner of exercising that power. Was the style
of laws enacted by the General Assembly material to the pro-
cedure of the people in enacting laws? We are sure that the
people knew, when they adopted the Initiative and Referendum
Amendment, that the great bulk of legislation would continue
to be enacted by the General Assembly, that the Initiative
would only be used and the Referendum invoked on great
and important questions. When they spoke of the style of
bills, were the framers of the amendment thinking about the
exercise of the old legislative power of the General Assembly,
or were they thinking about the exercise of the new power
they were creating? We are told that ·no interpretation
should be allowed that would conflict with any other provi-
sion of the Constitution. If we hold that the words of the
amendment, that the style of all bills shall be, ''Be it Enacted
by the People of the State of Arkansas,'' apply to bills passed
by the General Assembly as well as to bills initiated by the
people, the interpretation will be in direct conflict with section
19, article 5, which says that the style of laws of the State of
Arkansas shall be, ''Be it Enacted by the General Assembly
of the State of Arkansas,'' Is an interpretation that will cause
a conflict between section 19, article 5, and the amendment,
necessary to give full effect to the amendment? Not at all.
The fullest possible effect is given to the amendment when
it is said that bills initiated by the people shall be styled,
''Be it Enacted by the People of the State of Arkansas.'' So
far as the introduction or presentation of bills is concerned,
the amendment refers only to laws initiated by the people,
and, necessarily, when it speaks of the style of bills, it means
bills for the introduction and presenting of which it is pro-
viding. From the object to be attained, the mischief to be
remedied, the language used, its position in the text, and its
relation to other language used, we entertain no doubt that
this conclusion is sound. Now, it is our duty to construe
the amendment, if possible, so as to leave other provisions

of the Constitution unimpaired and in full force. Why not leave section 19, article 5, in full force? It is said that if this construction is adopted bills enacted by the General Assembly will have one style, "Be it Enacted by the General Assembly of the State of Arkansas," and that bills initiated by the people will have another style, "Be it Enacted by the People of the State of Arkansas." This of course, is true, but what of it? Is that a matter of such importance that it will justify us in disregarding the provisions of the Constitution? Is there anything out of the way, unusual, unreasonable, or extraordinary in having one style for laws enacted by the General Assembly and a different style for laws initiated and enacted by the people? Instead of being unreasonable, it seems to us wholly reasonable and logical. What is the object of the style of a bill or enacting clause any way? To show the authority by which the bill is enacted into the law, to show that the act comes from a place pointed out by the Constitution as the source of legislation.

It is clear, from the canons of construction we have taken for our guide, that section 19 of article 5 must stand unless it is expressly repealed, or unless it is in conflict with or repugnant to the amendment. Of course, it was not expressly abrogated, for it was not referred to. It is equally true that it is not in conflict with or repugnant to the Initiative and Referendum Amendment. They are not in conflict because one relates to legislation by the General Assembly and the other relates to legislation initiated by the people. They could only be repugnant if the Initiative and Referendum Amendment covered the whole scope of legislation. This, in our judgment, it did not do. The amendment not only does not deal with the whole scope of legislation, but it shows on its face affirmatively that it is only creating an additional legislative power and regulating the manner of its exercise. Instead of dealing with the whole scope of legislation, the Initiative and Referendum Amendment leaves absolutely untouched the many provisions of the Constitution contained in article 5 that relate to the exercise of legislative power by the General Assembly. Before any court would be justified in holding a provision of the Constitution abrogated on account of repugnancy to some other provision, it must appear that

there is an irreconcilable conflict between the purposes of the provisions that are claimed to be repugnant. Surely, there is nothing of that kind here. Repeal by implication is not favored, even in the construction of ordinary acts of the General Assembly, and certainly such repeal should not be favored when applied to long-established provisions of the organic law.

It is said that the words "all bills" in the Initiative and Referendum Amendment mean "all bills," from whatever source they emanate. In our opinion, they mean all bills that were being considered, that were in the minds of the proposers of the amendment; that is to say, bills that were to be initiated by the people.

We have endeavored to follow rules of construction that have been formulated by the wisdom of ages, and they lead us irresistibly to the conclusion that section 19, article 5, of the Constitution of 1874 is still unimpaired and in full force as to all bills not initiated by the people. The principles of law and rules of construction that support the view we have reached are so elementary and well established that citation of authority is deemed unnecessary. In our judgment any other conclusion would do violence to the language used and would violate all cardinal rules of construction.

In these views Mr. Special Justice HOUSE and Mr. Special Justice WALKER concur, and we unite in holding that the style of the bill in question in this case is proper, and that the act is not invalid because of the style of its enacting clause.

Mr. Special Justice HILL and Mr. Special Justice McCOLLUM dissent from the foregoing opinion wherein it holds that the act with the style, "Be it Enacted by the General Assembly of the State of Arkansas," is valid, for these reasons: This was the style prescribed by the successive Constitutions of the State from 1836 to 1874, inclusive, and is still the necessary style unless the Initiative and Referendum Amendment has changed it. The Initiative and Referendum Amendment re-enacts section 1, article 5, of the Constitution, vesting the legislative power of the State in the General Assembly, consisting of the Senate and House of Representatives, and adds thereto a reservation to the people of the right to legislate themselves through the Initiative and Referendum therein incorporated into the organic law. This court has recently

held that the Initiative and Referendum Amendment suspended the operation of all acts passed by the General Assembly until ninety days after its adjournment, and if within that time a proper referendum petition was filed against any act (except emergency acts) it is suspended until adopted by the affirmative vote of the people, and also that the Referendum extends to all acts passed by the General Assembly (except the emergency bills permitted it to exercise free of this right) even extending unto local bills. The amendment prescribes the number of votes necessary to adopt any measure submitted to the people, and provides that the people or the General Assembly may submit amendments to the Constitution, or measures, for adoption or rejection, at general elections, or special elections to be called to vote thereon. The lawmaking power of the State is thereby revolutionized, and all of it vested, affirmatively or negatively (save alone a limited class of emergency acts) in the people themselves. The power of the Referendum may not be exercised, but the people have a given time in which to exercise it, and the absence of its exercise is as certainly an approval of an act as active exercise of it by its adoption at the polls. It is similar to the veto power of the Governor. He has a given number of days after the adjournment of the Legislature to approve bills; and, if he fails to do so, the bill becomes a law without his approval, and he, by his nonaction, when he has a right to act, as positively approves a measure as if he signed it. And thus the people have the right to determine all legislation, either affirmatively or negatively. In the amendment carrying to the people this power is the clause in question, "The style of all bills shall be, 'Be it Enacted by the People of the State of Arkansas.'" As long ago as 1871 this court, in *Vinsant* v. *Knox*, 27 Ark. 266, held that the constitutional provision that the style of all bills should be, "Be it Enacted by the General Assembly of the State of Arkansas," was mandatory, and that a bill without this style (or substantially this style) was void, although otherwise regularly passed and approved. Therefore, the people knew that the style of a bill could not be disregarded, and it was vital, before they incorporated this clause in the Initiative and Referendum Amendment. When they provided in this amendment that the style should be, "Be it Enacted by the People," they

deliberately changed a vital part of bills from the style prevailing since the State was admitted into the Union.

It is argued that this applies only to initiated bills, but the law is not so written. It plainly says, "all bills." Moreover, it is found in the sections specially dealing with the Referendum and, from context and position, necessarily applies to referred bills. The amendment deals with initiated and referred measures, and becomes a substitute for the pre-existing law wherever the old provisions are inconsistent with the new. It makes radical changes in the existing Constitution, and one of the provisions of the existing Constitution prescribes that the style should show enactment by the General Assembly. Both clauses can not stand, one applying to bills enacted by the General Assembly, and the other applying to bills initiated or referred, because any bill may be referred (with the exceptions noted), and it will not be known until after the adjournment what bills are referred. Every act passed might be referred and every one adopted, and their adoption would be by the people, not the General Assembly; and every act might be defeated, and none become laws. No act might be referred, in which event by negative action the people permitted acts of the General Assembly to become laws after ninety days from its adjournment. Thus it is seen that it is consistent with the new order of things for the source of the power to be disclosed in the face of an act, and not consistent with that power for the old source of authority—the General Assembly—to appear on the act when in fact it was no longer concerned in the enactment except in the few instances of emergency legislation permitted the General Assembly free of the control of the people by direct action. The wisdom of making the formal part of an act vital may well be questioned, but that is not for the court to determine. The adoption of this amendment determines that the people themselves are the source from which all legislation emanated directly and no longer remained in their representatives other than as they—after examining their work concluded to approve it by nonaction. This new style of a bill was to give emphasis to the new method of legislation, and it is an outward form and expression of this concrete fact.

The Oregon court, in considering the effect of a consti-

tutional amendment upon provisions in the existing Constitution not consistent with it, said: "There is no express repeal, they simply cease to exist by reason of new provisions on the subject being substituted for them." Ex parte *Prindle*, 94 Pac. 871.

That is exactly the situation in regard to section 19, article 5, of the Constitution of 1874. By reason of this new provision prescribing the form of enacting clause for all bills, it ceased to exist, and this new style was then substituted therefor. Therefore, we conclude that an enacting clause running in the name of the General Assembly is invalid since the adoption of the Initiative and Referendum Amendment, and all bills, before they can become laws, must have an enacting clause substantially as prescribed in the amendment. "Be it Enacted by the General Assembly" can not be substantial compliance with "Be it Enacted by the People." Each has a definite meaning. Each indicates the source of power giving force to the act. Each represents its day and the stage of popular government of that day. They are not interchangeable; they present different thoughts, different views, different hopes, and mayhap different illusions. The use of one is not equivalent to the use of the other, so as to fulfill the rule of substantial compliance.

With the conclusion of special Justices HILL and MCCOLLUM as to the validity of bills enacted by the Legislature, upon its own initiative, bearing the style, "Be it Enacted by the People of the State of Arkansas," Special Justices HOUSE and WALKER concur, but for reasons different from those holding that the style of such bills is a substantial compliance with the provisions of section 19 of article 5 of the Constitution, and that, therefore, any bill bearing the title, "Be it Enacted by the People of the State of Arkansas," is a valid enactment, whether it be enacted by the General Assembly or initiated and enacted by the people. *Vinsant* v. *Knox*, 27 Ark. 266; *Jackson* v. *State*, 101 Ark. 437.

With this view I do not concur, as I do not think the enacting clause, "Be it Enacted by the People of the State of Arkansas," is a substantial compliance with section 19, article 5, of the Constitution.

That leaves for our consideration the question as to

whether or not the district is invalid because of the alleged uncertainty of the description of the territory proposed to be embraced therein. We understand the law to be that, when the Legislature creates a levee or other improvement district, it must define its boundaries with certainty, or provide for the same being done by some other agency. The Legislature undertook to define the limits of this district. We have carefully considered the act, and hold that it fails to define the limits of the district with sufficient certainty to determine what lands are included therein. Among other defects in the description are these: The stopping point of the line of the district in section 2, township 10 north, range 3 west, being the end of the first call, is not located. The course through sections 1, 2, 11, 10, 9, 16, in township 9 north, range 3 west, is not sufficiently defined. The line along White River is not fixed, but is left to be placed where it is deemed most practical. There are other defects in the description, but we do not discuss them, as those already mentioned are sufficient to defeat the act for uncertainty in the description of the territory proposed to be embraced therein. We hold the act invalid for this reason.

The cause is, therefore, reversed and remanded with directions to the court below to overrule the demurrer and grant the petitioners the relief prayed.