WASHBURN v. HALL, SECRETARY OF STATE.

5-819                                                    286 S. W. 2d 494

Opinion delivered January 23, 1956.

[Rehearing denied February 27, 1956.]

*Talbot Feild, Jr., Meehan & Moorhead,* for petitioners.

*Tom Gentry,* Attorney General, for respondent.

*Bailey, Warren & Bullion,* for intervenors.

SAM ROBINSON, Associate Justice. A petition for a referendum on Act No. 94 of the Acts of the General As-

sembly of Arkansas for 1955 was filed with C. G. Hall, Secretary of State. Acting upon the opinion of the Attorney General that the petition was insufficient because no popular name or ballot title was designated, the Secretary of State refused to certify it to the election officials. Contending that the petition is valid in every respect, Alex H. Washburn, and others, have filed an original action in this Court to compel the Secretary of State to certify the petition. The Attorney General, on behalf of the Secretary of State, has responded. Joe Ray, and others, Officers and Directors of the Arkansas Poultry Federation, have filed an intervention. The principal point in issue is whether Amendment No. 7 to the Constitution of Arkansas and Act No. 195 of the General Assembly for 1943, Ark. Stats. Sec. 2-208, have been complied with by the sponsors of the referendum petition.

Amendment No. 7 reserves to the people the right to refer and initiate laws; with reference to the petition to submit a measure to a vote of the people, the Amendment provides: "At the time of filing petitions, the exact title to be used on the ballot shall, by the petitioner, be submitted with the petition . . ." This amendment was adopted at the General Election in November 1920; it is in substitution of the I. and R. Amendment approved February 19, 1909. The enabling act for the 1909 amendment, Act No. 2 of the Extraordinary Session of the General Assembly for 1911, is repealed only in so far as it is in conflict with the 1920 amendment. *Westbrook* v. *McDonald*, 184 Ark. 740, 43 S. W. 2d 356, 44 S. W. 2d 331. We mention the 1911 Act at this point because Section 2 thereof provides: "The petition and order for referendum shall be substantially in the following form." Then follows the form that must be used in preparing the petition.

In 1943, the General Assembly adopted Act No. 195, which is now Ark. Stats. § 2-208. It provides: "Before any initiative or referendum petition ordering a vote upon any amendment or act shall be circulated for obtaining signatures of petitioners, the sponsors shall submit the original draft thereof to the Attorney General,

with a proposed legislative or ballot title and popular name. The Attorney General shall, within 10 days, approve and certify or shall substitute and certify a more suitable and correct ballot title and popular name for each such amendment or act; the ballot title so submitted or supplied by the Attorney General shall briefly and concisely state the purpose of the proposed measure. If the Attorney General refused to act or if the sponsors feel aggrieved at his acts in such premises, they may, by petition, apply to the Supreme Court for proper relief.

As heretofore mentioned, the act which petitioners seek to refer is Act No. 94 of the Acts of the General Assembly of 1955. The substance of this act is that it exempts all feedstuffs used in growing or producing livestock and poultry from what is known as the Gross Receipts Tax Act and the Arkansas Compensating Tax Acts, otherwise the Sales Tax. On April 1, 1955, Mr. Washburn, one of the petitioners, wrote to the Attorney General as follows: "I submit herewith an original draft of a petition for a referendum on Act No. 94 of 1955 for your consideration in accordance with Sec. 2-208 Ark. Stats. 1947." With the letter was enclosed the original draft of the petition. The petition is headed in bold face capital letters: "PETITION FOR REFERENDUM." Then printed under the above is: "Sales Tax Exemption for Livestock and Poultry Feed." Following, in very small print is: "This law was House Bill No. 222 by Teague of Carroll, et al." Next is the petition itself and following the petition is: "Act No. 94, approved February 22, 1955"; thereafter is set out the act in full, including the title and enacting clause. On April 5, 1955, the Attorney General wrote to Mr. Washburn: "I have examined your form for petition for referendum on Act No. 94 of 1955 and in accordance with Ark. Stats. 1947 (2-208), the same as submitted is hereby approved."

Nothing is mentioned in either the letter from Washburn to the Attorney General or from the Attorney General to Washburn about a popular name or ballot title. The sponsors of the petition proceeded to obtain signatures thereto and when a sufficient number were obtained,

the petition was filed with the Secretary of State. There immediately arose the question of whether Amendment No. 7 and Ark. Stats. Sec. 2-208, Act 195 of 1943, had been complied with in respect to obtaining the approval of the Attorney General as to the popular name and ballot title before the petition was circulated. The Secretary of State promptly asked for the Attorney General's opinion about the matter. The Attorney General answered the Secretary of State as follows: "It is my opinion that, since the sponsor has not submitted a ballot title and popular name as required by Section 2-208, and has not submitted a ballot title to the State Board of Election Commissioners as required by the 7th Amendment, as Secretary of State or as a member of the State Board of Election Commissioners, you have no authority to certify, order or place this question on the ballot as the provisions of the Constitution and Statutes which have not been complied with are mandatory." The Secretary of State, in accordance with the opinion of the Attorney General, refused to certify the petition to the election officials. Shortly after receiving a letter from the Secretary of State refusing to certify the petition, the sponsors filed this original proceeding. It is the contention of the petitioners that the sub-heading on the petition "Sales Tax Exemption for Livestock and Poultry Feed" is the popular name and, since the act itself contains a title, this title should be considered as the ballot title; and that, in any event, the petitioners should be allowed to amend the petition by designating a popular name and ballot title.

Act No. 195 of 1943, Ark. Stats. § 2-208, is no unwarranted restriction on Amendment No. 7. Obviously, the Legislature considered that in signing a referendum or initiative petition the signer should have the benefit of a popular name and ballot title that would give as much information about the proposed act as is possible to give by such means. It is apparent that the Legislature considered that the safer method would be to first submit the proposed popular name and ballot title to the Attorney General of the State for his approval and, if he did not approve that which was submitted, he should sub-

stitute and certify more suitable ones. This statute in no way curtails the operation of Amendment No. 7 but is in aid of the amendment and insures the giving to the signer of the petition as much information as is possible and practicable with regard to what he is being asked to sign. Here, the Attorney General was not asked to approve a popular name or a ballot title. Nothing was pointed out to him as a popular name or ballot title which the circulators of the petition intended to use as such. The Attorney General says that he was not asked to approve or disapprove a popular name or ballot title and that he has not done so; that he only gave his opinion as to the form of the petition. The form of the petition is set out by Act No. 2 of the Extraordinary Session of 1911, and that part of the Act as to the form of the petition was not repealed by the 1920 amendment to the Constitution.

It is clear that the framers of Act 195 of 1943 intended that the Attorney General should pass on the sufficiency of the ballot title and the popular name before the petition is circulated. The Act provides: ''If the Attorney General refused to act or if the sponsors feel aggrieved at his acts in the premises, they may, by petition, apply to the Supreme Court for proper relief.'' There is nothing complicated about Act 195; it is not difficult to follow; it is not calculated to make troublesome the right to take advantage of the I. and R. Amendment. It goes without saying that before any one could safely undertake to refer a measure to the people it would be necessary to review the Constitution and the Statutes pertaining to such referendum. It would be very easy to say to the Attorney General: ''Now here is what we propose as a ballot title and this is what we propose as a popular name.'' And the Attorney General would be required to either approve that which had been submitted or substitute something else. If the sponsors should feel aggrieved at his acts, they would have the right to apply to the Supreme Court for proper relief. This is not a contest between the Attorney General and the sponsors of the referendum petition. It must be remembered that Act No. 94 was adopted by the General Assembly of the

State of Arkansas; and the sponsors of the Act, who we presume are the intervenors here, have some rights in the matter. If the Attorney General approved a ballot title and popular name that was calculated to be misleading or not suitable to the question to be voted on, there would be a remedy in the courts. But those interested in the adoption of the measure could hardly attack a popular name or ballot title when neither had been designated as such; and, especially so, when the Attorney General had not passed on a ballot title or popular name and in fact states that he had not been requested to give an opinion in respect to such title and name.

Petitioners cite *Coleman* v. *Sherrill,* 189 Ark. 843, 75 S. W. 2d 248, where a petition to initiate a county salary act was filed with the County Clerk. It appears that the act as filed had a title which was sufficient to convey a fair meaning of the act; but such title was not designated as a ballot title. The Court held that although the title of the act was not designated the ballot title, there was substantial compliance with Amendment No. 7. This was also the holding in *Blocker* v. *Sewell,* 189 Ark. 924, 75 S. W. 2d 658; but both of those cases were decided many years prior to the adoption of Act No. 195 of 1943, Ark. Stats. § 2-208.

The ballot title should be complete enough to convey an intelligible idea of the scope and import of the proposed law, and it ought to be free from any misleading tendency, whether of amplification, of omission, or of fallacy, and it must contain no partisan coloring. *Westbrook* v. *McDonald,* 184 Ark. 740, 43 S. W. 2d 356, 44 S. W. 2d 331. See also *Sturdy* v. *Hall,* 204 Ark. 785, 164 S. W. 2d 884; *Bradley* v. *Hall,* 220 Ark. 925, 251 S. W. 2d 470. The proposed popular name and ballot title should be submitted specifically to the Attorney General in order that he may determine whether the name and ballot title meet these requirements.

In *Sturdy* v. *Hall,* 201 Ark. 38, 143 S. W. 2d 547, Mr. Justice FRANK SMITH said: ''It appears, therefore, that a very small per cent of our population may, at each general election, assemble the electorate into both a gen-

eral assembly and a constitutional convention. The law must, therefore, be, and is, that if a power so great may be exercised by a number so small, a substantial compliance with the provisions of the Constitution conferring these powers should be required.'' And it might be added that there should be substantial compliance with the statutes enacted in aid of the Constitution. ''The great body of the electors, when called upon to vote for or against an act at the general election, will derive their information about it from the ballot title. This is the purpose of the title.'' *Westbrook* v. *McDonald, supra.* There should be no confusion, no uncertainty, nothing indefinite, about what is designated as the popular name and ballot title when the petition is presented to the Attorney General. The popular name and ballot title should be called to the Attorney General's attention specifically so that he may act in accordance with the statute. Here, this was not done and the Attorney General has rendered no opinion approving a popular name or ballot title and the Secretary of State correctly refused to certify the petition to election officials.

As to petitioners' contention that time should be allowed to amend the petition for referendum by designating a popular name and ballot title, Ark. Stats. § 2-208 provides for obtaining the Attorney General's approval of popular name and ballot title before the petition is circulated; therefore, of course, it could not be amended by getting such approval after the circulation of the petition.

The petition to require the Secretary of State to certify the referendum petition is denied.

Justices McFADDIN and MILLWEE dissent.

Justice GEORGE ROSE SMITH disqualified.

MINOR W. MILLWEE, Associate Justice, dissenting. Ark. Stats., § 2-208 implements Amendment No. 7 of the Arkansas Constitution and reads:

''Before any initiative or referendum petition ordering a vote upon any amendment or act shall be circulated

for obtaining signatures of petitioners, the sponsors shall submit the original draft thereof to the Attorney General, with a proposed legislative or ballot title and popular name. The Attorney General shall, within ten days, approve and certify or shall substitute and certify a more suitable and correct ballot title and popular name for each such amendment or act; the ballot title so submitted or supplied by the Attorney General shall briefly and concisely state the purpose of the proposed measure. If the Attorney General refused to act or if the sponsors feel aggrieved at his acts in such premises they may, by petition, apply to the Supreme Court for proper relief."

Now the clear purpose of the above section is to insure that an I & R petition bears a ballot title and popular name which shall "briefly and concisely state the purpose of the proposed measure." It is equally clear that when a petition is submitted to the Attorney General under this section he shall either, "approve and certify or shall substitute and certify a more suitable and correct ballot title and popular name . . ."

On April 1, 1955, plaintiffs submitted to the Attorney General prior to circulation a petition which was headed in large bold type as follows:

PETITION FOR REFERENDUM
SALES TAX EXEMPTION FOR LIVESTOCK
AND POULTRY FEED

Below this followed the petition proper asking that Act No. 94 of 1955, entitled "An Act to Exempt Feedstuffs Used in Growing or Production of Livestock and/or Poultry in this State from the tax levied under the Gross Receipts Tax and that levied under the Compensating Tax Act, and for other purposes" be referred to a vote of the people at the 1956 General Election. In response to plaintiffs' request for a ruling on the petition, the Attorney General, on April 4, 1955, replied: "I have examined your form for petition for referendum on Act 94 of 1955 and in accordance with Ark. Stats. (1947) § 2-208 the same as submitted is hereby ap-

proved.'' In addition, the Attorney General furnished plaintiffs a set of ''Instructions to Canvassers and Signers'' signed by him and to be placed at the head of the petition. In the present action the Attorney General takes the position that the words which plaintiffs say constituted the ballot title and popular name are ''vague, indefinite, false and misleading.''

Plaintiffs proceeded to procure more than 34,000 signers to the approved petition, which was filed with the Secretary of State on June 8, 1955. Immediately the Secretary of State was beseiged with numerous letters and telegrams from interested legislators and officers of various poultry associations requesting him to obtain a ruling from the Attorney General as to the ''legality of the title'' of the petition. As one writer put it: ''Up in this neck of the woods we hope to find something wrong with the whole thing. Would you be so kind as to ask the attorney general to give us a public official ruling on the thing. Let's hope it is unconstitutional or something.'' Apparently even greater pressure was applied to the Attorney General. After considerable jockeying back and forth in which the Secretary of State repeatedly sought a definite ruling in the matter, the Attorney General wrote the letter on June 22, 1955, which concluded: ''It is my opinion that, since the sponsor has not submitted a ballot title and popular name as required by § 2-208, and has not submitted a ballot title to the State Board of Election Commissioners as required by the 7th Amendment, as Secretary of State or as a member of the State Board of Election Commissioners you have no authority to certify, order or place this question on the ballot as the provisions of the Constitution and statutes which have not been complied with are mandatory.''

The pertinent issue would seem to be whether the Attorney General was correct in the opinion initially given the plaintiffs or the one finally rendered to the Secretary of State. The majority say the latter. While logical arguments may be advanced in support of either

view, the Attorney General was eminently correct in his first opinion, in my humble judgment.

The rules governing the sufficiency of ballot titles have been repeated in many decisions. They are summarized in *Bradley* v. *Hall,* 220 Ark. 925, 251 S. W. 2d 470, as follows: "On the one hand, it is not required that the ballot title contain a synopsis of the amendment or statute. *Sturdy* v. *Hall,* 204 Ark. 785, 164 S. W. 2d 884. It is sufficient for the title to be complete enough to convey an intelligible idea of the scope and import of the proposed law. *Westbrook* v. *McDonald,* 184 Ark. 740, 43 S. W. 2d 356, 44 S. W. 2d 331. We have recognized the impossibility of preparing a ballot title that would suit every one. *Hogan* v. *Hall,* 198 Ark. 681, 130 S. W. 2d 716. Yet, on the other hand, the ballot title must be free from 'any misleading tendency, whether of amplification, of omission, or of fallacy,' and it must not be tinged with partisan coloring. *Walton* v. *McDonald,* 192 Ark. 1155, 97 S. W. 2d 81." Another cardinal principle that runs through all our decisions is that the provisions reserving to the people the powers of initiative and referendum are to be given a liberal construction to effectuate the object and purpose thereby adopted. In *Ferrell* v. *Keel,* 105 Ark. 380, 151 S. W. 269, the court said such object and purpose, "was to increase the sense of responsibility that the lawmaking power should feel to the people by establishing a power to initiate proper, and to reject improper, legislation." In *Reeves* v. *Smith,* 190 Ark. 213, 78 S. W. 2d 72, we said that since such residium of power rests in the electors, "their acts should not be thwarted by strict or technical construction."

The petition form which was circulated after its approval by the Attorney General clearly reveals that it bears a sufficient ballot title and popular name. The plain and easily understood words: "Sales Tax Exemption For Livestock And Poultry Feed," briefly and concisely state the purpose of the proposed measure, as the law requires. A popular name is not required by the

Constitution, and its requirement is merely a legislative device to make it easy for voters to discuss a measure. *Pafford* v. *Hall*, 217 Ark. 734, 233 S. W. 2d 72. The plain and simple words used by the sponsors here serve that exact purpose and could have no other function. I have challenged the majority, and I defy anyone to submit a ballot title or popular name that more clearly, concisely, definitely and accurately sets forth the purposes of the Act in question.

I do not understand that the majority have found any fault with the substance of the words used by plaintiffs as a ballot title and popular name. What they do hold is that it is mandatory that the petition not only contain the tags or designations, ''popular name'' and ''ballot title,'' following the words used as such, but that such designation must be called to the Attorney General's attention specifically; and that all this must be done on papers separate from the petition proper. This is a narrow, restricted and technical holding that overrules former cases and violates the whole spirit and intent of the I & R Amendment. We have held very definitely that the legislative title incorporated in a petition to initiate or refer a measure, is and does become the ballot title when so used even though it was not so designated. The majority blandly ignore the holdings in the *Coleman, Blocker* and *Hogan* cases to this effect by stating that they were decided prior to the enactment of Sec. 2-208.

While courts are not concerned with the wisdom or propriety of legislation, the people very definitely are. More than 34,000 Arkansas citizens felt that the Legislature acted wrongfully in exempting livestock and poultry feed from the sales tax while still exacting it on such vital necessities as medicine, milk and bread. In an earnest endeavor to make it possible for the people to determine for themselves whether this should be done, plaintiffs have become the unfortunate victims of a gross miscarriage of justice. Their valiant effort to exercise a precious constitutional right has now been completely thwarted by narrow, technical and illiberal judicial ac-

tion that is without precedent to sustain it.  I would permit the people to vote on Act 94 and, therefore, dissent from the conclusion of the majority.

Justice McFADDIN joins in this dissent.