ELLIS *v.* HALL, SECRETARY OF STATE.

4-9747                                        245 S. W. 2d 223

Per Curiam Interim Opinion delivered January 21, 1952.

*Edgar E. Bethell* and *Fred M. Pickins,* for petitioner.

*Ike Murry,* Attorney General, and *Cleveland Holland* and *W. R. Thrasher,* Assistant Attorneys General, for respondent.

PER CURIAM. The petitioners, as citizens and taxpayers, brought this original action questioning the valid-

ity of a referendum petition filed after the passage of Act 242 of 1951. The complaint in this court specifies various irregularities and frauds that are said to have occurred in connection with the signatures appearing upon the referendum petition. At a pre-trial conference held on January 4 certain issues that had been raised were withdrawn, and the attorneys were requested to file briefs upon three questions that should be decided before the taking of proof begins. This interim opinion sets forth the court's view upon these three issues.

*First:* Was the respondent, as Secretary of State, authorized to grant the sponsors of the petition a 30-day extension of time in which to obtain and file additional signatures? When the petition was originally filed on June 6, 1951, it was found by the Secretary of State to contain 19,269 signatures, which was more than the required 19,025. On June 7 the Secretary of State declared the petition sufficient, but on June 19 he notified the sponsors that 268 signatures had been found to be disqualified and that a 30-day period would be allowed for the filing of additional counterparts. Within this period the sponsors filed petitions bearing enough names to make the total again *prima facie* in excess of the required number of signatures.

We find the extension of time to have been authorized. When the original counterpart petitions were filed they apparently contained a sufficient number of signers. The petition was therefore *prima facie* sufficient, which distinguishes this case from *Dixon* v. *Hall*, 210 Ark. 891, 198 S. W. 2d 1002, relied on by the present contestants. Amendment 7 to the constitution provides: "If the Secretary of State . . . shall decide any petition to be insufficient, he shall without delay notify the sponsors of such petition, and permit at least thirty days from the date of such notification . . . for correction or amendment." An enabling act provides that after the notice of insufficiency the sponsors shall have thirty days in which "to solicit and obtain additional signatures." Ark. Stats. 1947, § 2-210.

These contestants argue that the thirty days of grace are intended only for the correction of typographical errors and other matters within the control of the sponsors and that the enabling act is invalid in attempting to permit amendments involving the filing of new signatures. This interpretation requires an unduly narrow view of the language of Amendment 7. The Amendment does not say that time shall be allowed for correction only, nor does it condition the granting of an extension upon a finding that the petition is insufficient as to form alone. Instead, the Amendment states that if the petition is found to be insufficient, time must be allowed for correction *or* amendment. An amendment is more than a mere correction and often adds something to the document amended, just as Amendment 7 itself added something to the constitution. Here the respondent found a *prima facie* valid petition to be insufficient for want of qualified signers and allowed further time for amendment. This procedure is well within the intention of the constitution.

*Second:* Must the referendum petitions be rejected because the sponsors failed to file a certified list of poll tax payers for each county in which a petition was circulated? Amendment 7 does not mention these lists, but the requirement is contained in an Enabling Act. Ark. Stats., § 2-206. In *Pafford* v. *Hall,* 217 Ark. 734, 233 S. W. 2d 72, we upheld the statute, but did not decide whether failure to file the lists is fatal to the attempted referendum when the petitions are challenged for want of enough qualified signers.

The Secretary of State, in passing upon the sufficiency of initiative and referendum petitions, acts in a manner somewhat analogous to the conduct of election officials in tabulating the ballots. It is a familiar rule of law that a provision of the election laws may be mandatory if enforcement is sought before the election in a proceeding brought for that purpose, but after the election the provision may be regarded as directory. *Whitaker* v. *Mitchell,* 179 Ark. 993, 18 S. W. 2d 1026. Had the Secretary of State demanded the lists as a condition to

passing upon the sufficiency of the petition, or had opponents of the referendum brought an action to compel the production of the lists, then the statute would have been mandatory. But no one made a timely objection to the sponsors' failure to file the poll books. The Secretary of State, without the aid of these lists, considered himself able to pass upon the sufficiency of the petitions. It is now too late for these contestants, having speculated upon the possibility that without the lists the petitions would be declared insufficient, to say that the result might have been different had the Secretary of State insisted that the lists be produced.

*Third:* What is the effect of actual fraud on the part of a canvasser who circulates part of a referendum petition? The contestants insist that proof of such fraud vitiates that part of the petition, so that not even the signatures of those who signed that particular sheet in good faith can be counted in determining the sufficiency of the petition as a whole. For the respondent it is contended that proof of such fraud destroys the *prima facie* verity of the sheet in question and shifts to the proponent the burden of proving the validity of each signature.

We have not passed upon this exact question. In *Sturdy* v. *Hall,* 201 Ark. 38, 143 S. W. 2d 547, we held that where the canvasser knowingly executes a false affidavit the names upon that part of the petition must be rejected, but the opinion points out that the proponents offered no rebutting proof: ''No attempt was made to show nor was time asked in which to show that there were valid signatures on the petitions to which the false affidavits were attached.'' In the next case, *Sturdy* v. *Hall,* 204 Ark. 785, 164 S. W. 2d 884, it was held that where there was no willful violation of law that the entire sheet should not be rejected. This case was followed in the *Pafford* case, *supra,* but again the proponents did not go forward with the evidence in the rare instances in which willful misconduct had occurred.

In the first *Sturdy* case we cited with approval a case from Oregon, *State ex rel. McNary* v. *Olcott,* 62 Ore.

277, 125 P. 303. There the court passed directly upon the question now at issue and said that where fraud on the canvassers' part is shown "the *prima facie* case made by the affidavit of these circulators in favor of the genuineness of these petitions is overcome, putting the burden of proof upon the defendant to establish the genuineness of each signature." We think this to be the better rule. The first forty names on a sheet of fifty may have been signed in good faith by qualified electors, and the canvasser may have forged the last ten names to complete the sheet. In this situation the forty honest voters ought not to be disfranchised by conduct of which they were ignorant and in which they did not participate. The ten spurious names must be rejected and the willfully false affidavit gives no *prima facie* verity to the rest of the petition, but the proponents should be permitted to assume the burden of proving the validity of genuine signatures.

WARD, J., dissenting. In *Sturdy* v. *Hall,* 201 Ark. 38, 143 S. W. 2d 547 the court discussed at length the far-reaching implications of the power conferred by Initiative and Referendum Amendment No. 7 and seemingly indicated that we should be cautious about reading more into the enactment than clearly appears therein to give it effect. The concluding thought is expressed in these words:

"It appears, therefore, that a very small per cent. of our population may, at each general election, assemble the electorate into both a general assembly, and a constitutional convention. The law must, therefore, be, and is, that if a power so great may be exercised by a number so small, a substantial compliance with the provisions of the Constitution conferring these powers should be required."

In my opinion the above pronouncement portrays sound and practical reasoning, and it should not be ignored when considering the three issues decided by the majority. I am unable to bring myself in accord with either of the three conclusions, as indicated below.

874

1. The words "for correction and amendment" should not be interpreted to confer the right to add additional names to referendum petitions after they have been declared "insufficient" [for the lack of sufficient names]. (a) If the authors of Amendment No. 7, being zealous as they manifestly were to extend and protect these rights to the people, had intended to give the sponsors a second chance to secure needed signatures they would have made that intention known in no uncertain language. Since the language does leave a serious doubt as to the extent of its meaning it should, it seems to me, be resolved against the respondents in this case. (b) Our own court has already placed its interpretation on the language here under consideration in the case of *Dixon* v. *Hall*, 210 Ark. 891, 198 S. W. 2d 1002. There the same amendment was involved and the court, in refusing to allow additional names to be added, used this language: "*Correction* and *amendment* go to *form* and *error.*" I can not conceive how it can be logically insisted that the addition of new names to a petition would come under either *form* or *error.* In the absence of any good reason to the contrary suggested or occurring to me I prefer to follow the path so clearly indicated by our own former decision.

2. With the majority holding that a failure to file certified poll lists with the petitions is not fatal, I also do not agree. It may be conceded that such a defect could be remedied under *form* or *error* on the first filing, but where no additional time can be extended, as in this case, a very different situation presents itself. Act 195 of 1943, § 3, provides: ". . . when a part is delivered to the Secretary of State, the sponsors shall also deliver a duly certified list of poll tax-payers of the county in which the particular part [petition] was circulated." We said in *Pafford* v. *Hall*, 217 Ark. 734, 233 S. W. 2d 72, this act was constitutional and valid, and in the *Sturdy* case, *supra*, we said there must be a *substantial* compliance. Here there was absolutely no compliance.

3. Likewise I cannot agree with the majority holding that a fraudulent affidavit [regardless of how cor-

rupt or to what extent it reaches] merely shifts the burden to the respondents to establish valid signatures. Such an affidavit invalidates the entire petition and leaves no remedy to the respondents, as, in my judgment, this court has already indicated in three separate cases, viz: *Sturdy* v. *Hall, supra; Sturdy* v. *Hall,* 204 Ark. 785, 164 S. W. 2d 884; and *Pafford* v. *Hall, supra.* The second *Sturdy* case in no way relaxed the rule announced in the first one, but clearly distinguished it on the facts. The rule followed by the majority here may be referred to as the "Oregon Rule." In this the majority may be sustained by plausible reasoning, but the fact is that this very rule was considered and rejected in both the *Sturdy* cases. About this there can be little doubt because, in the first the court, after carefully considering and posing the question, it has said:

"The cases which have considered the question, as will presently appear, are to the effect that petitions verified by an affidavit shown to be false are treated as petitions having no affidavit. In other words, the false affidavit is no affidavit."

Then the opinion leaves no doubt about the fate of a petition with no affidavit for it further states: "No one would contend that names should be counted which appear upon petitions containing no verifying affidavit."

Thus, it seems to me, the court has clearly indicated what our decision should be on this issue. No peculiar facts or circumstances have been suggested in this case to warrant a departure from a course so clearly defined, and it would appear to me to be a strained conclusion that disregards the clear pronouncements of our own court to follow a foreign rule which we have heretobefore refused to accept.