Ellis *v.* Hall, Secretary of State.

4-9747                                                         251 S. W. 2d 809

Opinion delivered October 20, 1952.

*Edgàr E. Bethell* and *Fred M. Pickens,* for petitioner.

*Ike Murry,* Attorney General and *Cleveland Holland, W. R. Thrasher* and *Wm. M. Moorhead,* Assistant Attorneys General, for respondent.

Griffin Smith, Chief Justice. The litigation, necessitating a determination of controversial Act 242 of 1951, was begun when Ellis and Davidson filed an original proceeding in this court November 17, 1951, challenging sufficiency of the petition to refer. See *Ellis* v. *Hall, Secretary of State,* 219 Ark. 869, 245 S. W. 2d 223.

This is the first action reaching this court under Amendment No. 7 to the Constitution, involving a statewide petition, where nature of the issues and character of the proof reasonably necessary to an understanding of factual transactions clearly indicated from the inception that large expenditures for witness fees, court costs of a miscellaneous nature, compensation of a commis-

sioner should one be appointed, and items of like nature, would inevitably attach.

Unfortunately the probability of comprehensive litigation such as we have been dealing with did not occur to the General Assembly; or, if so, it did not make provision for the payment of costs. The inference deducible from Amendment No. 7 is that when counterpart petitions are filed with the Secretary of State containing in the aggregate names sufficient to set the State's machinery in motion, the question at issue is a public one and may not be controlled by the persons primarily interested in initiating or referring a measure. It therefore seems logical that the cost of litigation is removed from the realm of private interest and becomes an obligation of the State; and, as we have seen, the policy-making department has not provided an appropriation to meet such necessary expenses.

Faced with this dilemma the court had no recourse but to require the plaintiffs to execute a cost bond. Its sufficiency is conceded, but the plaintiffs have at all times contended that expenses necessary to the defendant's proof should not be taxed against the bond. The argument was not without persuasive phases and the court, when motions were made from time to time, was reluctant to enter a general order broad enough to permit the Attorney General as the State's counsel to indiscriminately incur obligations that the plaintiffs' bondsmen would have to pay, hence the trial did not proceed as expeditiously as would have been the case if unrestricted recourse to the bond had been authorized.

In an initial effort to minimize expenses, at least two members of the court voted that the judges sit in divisions or individually in relays as time permitted. The majority believed, and perhaps correctly, that routine appellate work would suffer if this method should be adopted. It was also pointed out that a constant shift in the presiding authority would interrupt continuity, since much that was heard would depend upon memory or written memoranda. The final consensus was that a commis-

sioner should be designated, invested with authority to conduct hearings, compel the attendance of witnesses, pass upon legal issues, and then report to the court. For this work Mr. Wayne Upton of the Little Rock bar was selected and it is a matter of gratification to the court that not a single complaint was made regarding his methods, nor have there been any informal suggestions that his official conduct has been other than that meeting the highest judicial test.

During the protracted period following announcement of procedural policy, numerous motions were filed directly with the court, and at times the Commissioner asked for directions. The subject-matter was sometimes thought by the judges to be of a nature not germane to the principal issue; or, if germane, of a kind that would be resolved without prejudice to either side if the litigants were permitted to proceed in the absence of specific detemination at that time. This course by the court may have prolonged the trial.

Before its summer adjournment July 7th an order was entered whereby the court could reconvene upon call of the Chief Justice during the recess period, but due to a misunderstanding (explained from the bench last Tuesday afternoon when the plaintiffs asked for judgment on the Commissioner's findings) this meeting was not held.

Some of the responsibility for not having the interim session rests upon the writer of this opinion; none is attributable to the other judges. It is obvious, however, that the litigation could not have been completed in time for judgment before certification of the ballot if the court had met.

The Commissioner's report, being tentative as to results and containing *prima facie* findings only, meant nothing more than that the evidence offered by plaintiffs showed the petition to be approximately 1,400 short of the required number of signers, *provided* the defendants could not reclaim an equal number from the more than 8,000 signatures *prima facie* invalid. When the plaintiffs rested June 19th the announcement was coupled with **a**

statement that the right was reserved, "if necessary," to take testimony out in the state, for [said the attorney] "We have about 3,800 names in addition to those that have been testified to here."

The Commissioner's report was filed September 29th.

Some of the members of the court believe that *Beene* v. *Hutto,* 192 Ark. 848, 96 S. W. 2d 485, is authority to enter an order at any time before the election finding that a measure to be voted upon is not properly on the ballot, hence a certificate by election commissioners that the measure had been adopted would be nugatory. In view of our conclusion that the issues cannot be determined before the election November 4th, it is not necessary to construe the Amendment or Judge MEHAFFY's opinion in the Beene case.

The result is that we are unwilling for a public matter to be withheld from the electorate on a *prima facie* showing alone, and since the remaining time is insufficient for completion of the proof the injunction is denied and the cause dismissed.

Mr. Upton is authorized to collect under the bond such sums as may be necessary to pay costs. The Commissioner's fee, being a similar charge, will be fixed by the court if the parties are unable to reach an agreement.

ED. F. McFADDIN, Justice (concurring). I concur in the result reached in this case—i. e., that the litigation should be dismissed. But my reasons for such conclusion are far different from those contained in the opinion written by the Chief Justice; and I now state my reasons:

I urged this Court to dismiss this case on April 4, 1952. At the hearing on that day facts, generally known, were stated and admitted in open court: (a) it was conceded that State employees, while drawing salaries from the State for their time, spent weeks going over the State checking to see if the names on the referral petitions were genuine; and (b) one of the plaintiffs' attorneys stated: "The real style of this case should be 'The Governor of the State of Arkansas v. John F. Wells'."

Thus, on April 4th, it became a matter of record that this case was not being prosecuted as a bona fide suit by the taxpayers, Ellis and Davidson, to determine the number of genuine signatures on the referral petitions: rather this case was being prosecuted by the State's Chief Executive at the taxpayers' expense in an effort by one partisan group to smear another partisan group, and at the same time to get matters so arranged that some State purchases could be made without having to have any competitive bidding.

When the aforesaid admissions and declarations were made in open court, I reached the conclusion that this Court should not lend itself to any such campaign as was here attempted in the names of the plaintiffs. The Judicial Department should not allow itself to be used by the Executive Department in any such manner. I stated in open court on April 4th that it was evident to me that the case was not being prosecuted in the name of the real parties in interest, and that the case should be dismissed. I so voted at the consultation on April 4th; and I have all the time stood on that vote. Therefore I concur in the dismissal of this case.

WARD, J., dissenting. In dissenting to the majority opinion, I agree with and hereby adopt the dissenting opinion written by Judge ROBINSON, but feeling that his dissent did not go far enough, I herewith submit the following.

Every opinion by this court, of course, sets out the reasons upon which the decision rests, otherwise the opinion could not be evaluated. The underlying reason, as I understand it, why the majority dismissed plaintiffs' suit was that the case could not be fully developed. As I see it this could only mean that the defendant could not develop his side of the case because it is conceded plaintiffs did develop their side. I shall attempt to analyze some of the reasons, as best I can gather them from the majority opinion, given which prevented the defendant from having the opportunity to rebut the *prima facie* case made out by the plaintiffs. Before doing so and in view of the fact that plaintiffs were required to pay all costs let

me say it appears significant that in no way are the plaintiffs charged with any delay or fault.

(a) It is said that the Legislature made no provisions for the payment of costs; that therefore the only remedy was to make the plaintiffs pay; and that the court was loathe to provide the defendant with ample sinews of war and so may have delayed the defendant. It seems to me this "reason" ignores all undisputed facts. The defendant had, as pointed out by Judge ROBINSON, from June 19 to October but made no move and no complaint about lack of funds. The blanket bond which plaintiffs gave has never been questioned. In requiring plaintiffs to make such a bond this court went contrary to all former precedents. With all due respect to the statement in the majority opinion to the contrary the same question involved here regarding bond and costs has been before this court previously.

In *Dixon* v. *Hall, Sec'y of State,* 210 Ark. 891, 198 S. W. 2d 1002, an original action involving the same amendment 7, the plaintiff Dixon was not required to make a bond. Moreover, Dixon [corresponding to the plaintiffs here] won the case and recovered his costs. In book C-41 of this courts proceedings at page 159 appears the following: "It is further ordered that said petitioner [Dixon] recover of said respondent [Hall] and his costs in this cause expended."

In *Withee* v. *Hall, Sec'y of State,* 217 Ark. 644, 232 S. W. 2d 827, an original action involving the same amendment 7 and in which the record appears to be as expensive as here, Withee [corresponding to the plaintiffs here] was not required to put up a bond for costs. Moreover, Withee won his case and recovered his costs. In book D-2 of this court's proceedings at page 224 appears the following: "It is further considered that said petitioner [Withee] recover of said respondent [Hall] and his costs in this court in this cause expended."

(b) The impression is left that this court and particularly the Chief Justice in some way by its and his neglect caused the defendant to be delayed. I cannot pos-

sibly see any merit in this. The main reason why 1 say this is that the defendant, in all events, had from June 18 to the middle of August to proceed with his case and neglected or refused to do so. At any rate this reason which the majority seized upon is not one which the defendant had ever complained about. It is admirable in the Chief Justice to assume all the blame but in my honest opinion he is in no way to be blamed. Regardless of any oversight on his part his actions in no way prejudiced the defendant.

(c) It is stated in the majority opinion that some of the court thought *Beene* v. *Hutto* was authority for giving the defendant additional time up to November 4th. Since the proceedings of the conference table have been exposed I feel at liberty to give my version. It was my distinct understanding that all the judges, except one, thought the *Beene* case limited the hearings to October 15th. Further, it was my understanding that had it been possible to do so a majority of the judges would have been willing to extend the time for defendant.

ROBINSON, J., dissenting. This is a history-making case, for it is, so far as I have been able to ascertain, the first case that has ever occurred where the complaint states a cause of action, and substantial evidence—in fact, overwhelming evidence—is introduced proving the allegations and making a *prima facie* case, yet the cause is dismissed without the defendant having introduced any evidence whatever.

On the 21st day of January, 1952, this court appointed a Commissioner to take evidence in the case. Plaintiff's attorneys diligently proceeded to introduce before the Commissioner evidence to prove the allegations set out in the complaint. Plaintiffs' undertaking was a tremendous one. They had the burden of showing that some 7,000 signatures on the petition were illegal by reason of having been forged or for other reasons. In order to prove their case, the plaintiffs produced before the Commissioner hundreds of witnesses. The necessary cost in producing such a tremendous volume of evidence must have amounted to thousands of dollars.

On June 19th the plaintiffs rested their case. At that time the Commissioner announced that the plaintiffs had made a *prima facie* case, that is to say, substantial evidence had been introduced to prove the allegations in the complaint. To this hour, the defendant has not introduced one scintilla of evidence of any description even attempting to rebut the evidence introduced by the plaintiffs.

It is stated in the majority opinion that the writer thereof feels some responsibility for there being no interim session of court. The fact that this court adjourned on July 7th subsequent to the time the plaintiffs closed their case June 19th in no way prevented the defendant from proceeding. The Commissioner before whom the evidence was being taken was available and the plaintiffs had filed a perfectly good bond for any cost that might be assessed against them.

The majority say they are unwilling to decide the case in favor of the plaintiff "on a *prima facie* showing alone." The definition of a *prima facie* case as given in Ballentine's Law Dictionary is as follows: "A cause of action or a defense sufficiently established by a party's evidence to justify a verdict in his favor, provided the other party does not rebut such evidence." There is never any kind of case established at the time the plaintiff closes his case in chief except a *prima facie* one. This is also true in criminal procedure at the close of the State's case in chief, but when a capital offense is charged the *prima facie* case made by the State is sufficient to send a defendant to the electric chair if it is not rebutted.

According to the rule announced by the majority, a plaintiff can never win the kind of case involved here for the simple reason that he can never make anything other than a *prima facie* case by his evidence in chief.

The plaintiffs have complied with every order of this court and have adopted no dilatory tactics. They convinced the Commissioner, an able and outstanding member of the bar of this court, of the righteousness of their cause and are entitled to a judgment in their favor. Yet their complaint is dismissed.

I cannot agree to the dismissal. Therefore, I respectfully dissent from the opinion of the majority.

I am authorized to say Mr. Justice Holt concurs in this dissent.