SLIP OPINION

Cite as 2014 Ark. 442

# SUPREME COURT OF ARKANSAS

No. CV–14–806

| | |
|---|---|
| JACKSON THOMAS STEPHENS, JR. PETITIONER | **Opinion Delivered** October 27, 2014 |
| V. | AN ORIGINAL ACTION |
| MARK MARTIN, SECRETARY OF STATE RESPONDENT | |
| STEPHEN COPLEY, INDIVIDUALLY AND ON BEHALF OF GIVE ARKANSAS A RAISE NOW | |
| INTERVENOR | PETITION DENIED. |

**PAUL E. DANIELSON, Associate Justice**

Petitioner Jackson Thomas Stephens Jr. brings this original action pursuant to Arkansas Constitution article 5, section 1, and amendment 80, section 2(D)(4), challenging the sufficiency of a statewide initiative petition. He asks this court to enjoin respondent Mark Martin, Secretary of State ("Secretary of State"), from placing the initiated act known as "An Act to Increase the Arkansas Minimum Wage," or Issue No. 5, on the November 4, 2014 general–election ballot or, alternatively, from certifying any ballots cast for it. The proposed act is sponsored by intervenor Stephen Copley, individually and on behalf of Give Arkansas A Raise Now ("GARN"). On September 25, we ordered expedited proceedings and appointed the Honorable John B. Robbins as master. *See Stephens v. Martin*, 2014 Ark. 402

(per curiam). The "Master's Report and Findings of Fact" has now been filed with this court,

and the parties have filed their briefs in the matter. We deny the petition.

On January 3, 2014, the Arkansas Attorney General "certified as submitted" the

popular name of the proposed initiated measure, which is set forth above, and the following

ballot title that were submitted by Copley, as chairman of GARN:

> AN ACT TO AMEND THE ARKANSAS CODE CONCERNING THE STATE MINIMUM WAGE; THE ACT WOULD RAISE THE CURRENT STATE MINIMUM WAGE FROM SIX DOLLARS AND TWENTY-FIVE CENTS ($6.25) PER HOUR TO SEVEN DOLLARS AND FIFTY CENTS ($7.50) PER HOUR ON JANUARY 1, 2015, TO EIGHT DOLLARS ($8.00) PER HOUR ON JANUARY 1, 2016, AND TO EIGHT DOLLARS AND FIFTY CENTS ($8.50) PER HOUR ON JANUARY 1, 2017.[1]

Op. Ark. Att'y Gen. No. 156 (2013). A petition part was filed on February 20, 2014, with

the Secretary of State's office in accord with Arkansas Code Annotated § 7-9-104(d)(2) (Supp.

2013),[2] and on Monday, July 7, 2014, GARN submitted its initiative petition with signatures

to the Secretary of State. After numbering the petition parts, the Secretary of State "initially

reviewed each petition part to determine three things: if each was an original, not a

photocopy; if there was a legible copy of the entire text of the measure attached; and if the

popular name and ballot title were attached." As a result of this review, the Secretary of State

culled, or set aside, 1,243 petition parts containing 7,983 signatures, because those parts did

---

[1]The facts are taken in significant part from the master's report and findings of fact, which included findings based on the "parties' Stipulated Exhibit #1 [that] set forth a summary of the history of the case and procedures that were followed by the [Secretary of State]'s staff in processing the petitions."

[2]That section provides: "Before the circulation of a statewide petition for signatures, the sponsor shall file a printed petition part with the Secretary of State in the exact form that will be used for obtaining signatures." Ark. Code Ann. § 7-9-104(d)(2).

SLIP OPINION

not have a legible copy of the entire text of the measure; those 7,983 signatures were not included in the Secretary of State's initial count of the signatures that were submitted July 7 by GARN.

The Secretary of State then reviewed the petition parts for other items, including the following: "Canvasser signature; Canvasser signature matches printed canvasser name; Canvasser verification date is on the day of or after the date(s) petitioners signed; Canvasser and notary are not the same person; Single notary, with notary signature and notary seal; Notary is currently registered in Arkansas; [and] Potentially fictitious or forged signatures."[3] A total of 754 petition parts were culled for not meeting these criteria; nonetheless, the 5,580 signatures on those parts were included in the initial count of the July 7 signatures.

Ultimately, the initial count conducted by the Secretary of State of the July 7 signatures resulted in a total of 64,133 signatures, with at least a total of 62,507 signatures, along with article 5, section 1's fifteen-county signature requirement, needed to place an initiated act on the 2014 general-election ballot. GARN was then notified by the Secretary of State on July 16, 2014, that the initial-count requirement had been met, and the petition parts were

---

[3]Although the Arkansas Code contains a statute outlining which petition parts and signatures should be counted for purposes of the Secretary of State's initial count, the Secretary of State, in a separate case, was enjoined by judgment of the Pulaski County Circuit Court from applying its provisions. *See Spencer v. Martin*, No. 60CV-13-4020 (Apr. 2, 2014) (judgment declaring certain provisions of Act 1413 of 2013 unconstitutional and permanently enjoining the Secretary of State from enforcing those provisions, including Ark. Code Ann. § 7-9-126 (Supp. 2013)). At the time of the initial count in this case, the Secretary of State was operating under this injunction and was precluded from applying the provisions of section 7-9-126. We therefore offer no opinion on that statute's viability under the constitution or this court's case law.

submitted for signature review and verification. During that review, more than 3,000 signatures were disqualified, and the Secretary of State notified GARN on July 18 that the petition did not meet the signature requirements established in article 5, section 1. He then gave GARN an additional thirty days to "solicit and obtain additional signatures; submit proof to show that the rejected signatures or some of them are good and should be counted; or make the petition more definite and certain." In addition, GARN was advised that it had thirty days to meet the burden set forth in Ark. Code Ann. § 7-9-111(b) (Supp. 2013) for signatures rejected due to concerns that the signatures were fictitious or forged.[4]

GARN subsequently submitted additional petition parts to the Secretary of State on August 18, and that office conducted the same reviews as on the July 7 petition parts. Ninety-seven parts containing 635 signatures were culled for failing to have a legible copy of the text of the measure, and those 635 signatures were not included in the count of the signatures submitted on August 18. An additional 712 petition parts containing 5,049 signatures were culled after examination of the following: canvasser's signature; the matching

---

[4]Section 7-9-111(b) provides:

> In considering the sufficiency of initiative and referendum petitions, if it is made to appear beyond a reasonable doubt that twenty percent (20%) or more of the signatures on any one (1) part thereof are fictitious, forged, or otherwise clouded or that the challenged petitioners were ineligible to sign the petition, which fact was known or could have been ascertained by the exercise of reasonable diligence on the part of the canvasser, then the Secretary of State shall require the sponsors to assume the burden of proving that all other signatures appearing on the part are genuine and that the signers are qualified electors and are in all other respects entitled to sign the petition. If the sponsors refuse or fail to assume and meet the burden, then the Secretary of State shall reject the part and shall not count as petitioners any of the names appearing thereon.

Ark. Code Ann. § 7-9-111(b).

of the canvasser's signature to the canvasser name printed; the canvasser verification date being that on the day of or after the date a petitioner signed; the canvasser and notary not being the same person; a single notary, with notary signature and notary seal; the notary being currently registered in Arkansas; and potentially fictitious or forged signatures.

On August 21, 2014, the Secretary of State certified GARN's proposed initiated act to the county boards of election commissioners and advised the county boards that the proposed initiated act would be Issue No. 5 on the November 4 general-election ballot. The Secretary of State subsequently notified GARN on September 3 that its petition met the signature requirements of article 5, section 1. At that time, the Secretary of State had determined that the petition contained "no fewer than 70,074 valid signatures," which was in excess of the required 62,507. GARN was also advised that the total number of valid signatures may increase because additional petition parts had not yet been reviewed for the sufficiency of signatures and that the verification process would continue. After the Secretary of State completed its review, GARN was notified on September 9 that of the 130,016 signatures submitted, a total of 89,790 had been validated.

On September 22, 2014, Stephens filed the instant original action with this court and amended his complaint on September 23. In it, Stephens contended that GARN's petition had not been timely filed with the Secretary of State and that the Secretary of State had counted signatures that were defective. He requested expedited consideration and the appointment of a master, which we granted in our per curiam order of September 25. *See* *Stephens*, 2014 Ark. 402. We further granted GARN's motion to intervene. *See id*. A

SLIP OPINION

hearing was held on October 2–3, 2014, at which the master heard testimony, received evidence, and heard the arguments of counsel, and on October 10, the master filed his report and findings of fact with this court's clerk. We will accept the master's findings of fact unless they are clearly erroneous. *See Roberts v. Priest*, 334 Ark. 503, 975 S.W.2d 850 (1998). A finding of fact is clearly erroneous, even if there is evidence to support it, when, based on the entire evidence, the court is left with the definite and firm conviction that the master has made a mistake. *See id.*

Article 5, section 1 of the Arkansas Constitution, incorporating Amendment 7, governs both statewide and local initiatives and referendums. *See* Ark. Const. art. 5, § 1, *amended by* Ark. Const. amend. 7; *Mays v. Cole*, 374 Ark. 532, 289 S.W.3d 1 (2008). Jurisdiction to review the sufficiency of statewide initiative petitions is conferred upon this court by way of Amendment 7 to the Arkansas Constitution. *See Ward v. Priest*, 350 Ark. 345, 86 S.W.3d 884 (2002). Amendment 7 states that "[t]he sufficiency of all state-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes." Ark. Const. art. 5, § 1, *amended by* Ark. Const. amend. 7. Following certification by the Secretary of State, Amendment 7 clearly confers original and exclusive jurisdiction upon this court to review the Secretary of State's decision as to the sufficiency of the petition. *See Ward*, 350 Ark. 345, 86 S.W.3d 884.

We turn then to the two challenges to the sufficiency of the petition made by Stephens in his brief, that (1) the proposed initiated act was not facially valid because it relied on forged

SLIP OPINION

notaries to reach the signature threshold and therefore GARN was not entitled to a thirty-day cure period; and (2) the petition was not timely filed.

## I. *Thirty-Day Cure Period*

Stephens initially argues that the petition was not prima facie valid when it was submitted on July 7 because it relied on petition parts with forged notary signatures to meet the initial-count signature threshold.[5] For this reason, he claims, GARN was not entitled to a thirty-day cure period. With respect to this claim, the master found, in relevant part:

> The second issue is Petitioner's contention that several signatures should not have been included in the Respondent's initial count because the notary's signature on many of the petition parts had been forged.
>
> (e) Petitioner presented evidence through the testimony of handwriting analysis expert Joe Lucas that the signature on 1666 petition parts were not that of Alex Rancifer who purportedly signed as a notary. There are 8611 signatures on these 1666 petition parts. This total must be reduced by 110 signatures on 19 of the petition parts that I found should have been culled for failure to have a complete legible text of the entire measure as discussed above in paragraph (c) dealing with the first issue. These 8501 signatures are found to be invalid.
>
> (f) Although the 8501 signatures are invalid they were not facially invalid for purposes of the initial count, i.e., their invalidity did not appear on the face of the petition parts. Facially, these petitions and notary's acknowledgments appeared to be compliant, having the purported signature of notary "Alex Rancifer," which matched the name in the notary's seal. In arriving at this finding, I found it necessary and helpful to review the caselaw

---

[5]We note that Stephens's challenge appears to be, and the master found it was, limited to the initial submission of signatures on July 7. As the master noted in his report:

> Petitioner does not question the sufficiency of the signatures that were filed with the Respondent if those filed during the 30-day cure period must be counted. The thrust of Petitioner's challenge is that the Respondent erred in allowing Intervenor a 30-day cure period to obtain and file additional petition parts.

Indeed, Stephens states that his challenge "goes to the authority of the Secretary of State to grant the additional thirty-day cure period."

on the issue of facial validity and what is curable. I concluded that the signatures should be counted by Respondent because the signatures themselves have not been called into question by the evidence and problems with the notarization have been subject to cure.

(Footnote omitted.)

Stephens maintains that GARN's petition was not facially valid for purposes of obtaining a thirty-day cure period since it did not contain the requisite number of signatures. He contends that because the notary signatures on certain petition parts had been forged, the petition was not facially valid, which he claims was required in order to obtain a thirty-day cure period. Stephens avers that if the signatures on the forged petition parts had been properly excluded from the July 7 count, GARN would have lacked the requisite number of signatures to entitle it to a thirty-day cure period, and GARN's proposed initiated act fails for want of initiation.

This court has previously considered the propriety of the Secretary of State's determination relating to the thirty-day cure period under Amendment 7. *See, e.g.*, *Arkansas Hotels & Entm't, Inc. v. Martin*, 2012 Ark. 335, 423 S.W.3d 49 (original action seeking a writ of mandamus to the Secretary of State to accept the petition); *Ellis v. Hall*, 219 Ark. 869, 245 S.W.2d 223 (1952) (per curiam) (interim opinion in an original action); *Dixon v. Hall*, 210 Ark. 891, 198 S.W.2d 1002 (1946) (original action seeking to enjoin the Secretary of State from accepting additional signatures). In *Dixon*, this court held that it was intended that a petition be filed within the time fixed by Amendment 7. Further, "[t]o be a petition, it must *prima facie*, contain at the time of filing, the required number of signatures." 210 Ark. at 893, 198 S.W.2d at 1003. The inverse of this is that the complete failure to obtain the requisite

number of signatures results in the proposed measure failing for want of initiation. *See id.*

The subject of the instant challenge is Amendment 7's provision of a thirty-day cure period "[i]f the Secretary of State . . . shall decide any petition to be insufficient." Ark. Const. art. 5, § 1, *amended by* Ark. Const. amend. 7. The Amendment states that "if the petition is found to be insufficient, time must be allowed for correction *or* amendment." *Ellis*, 219 Ark. at 871, 245 S.W.2d at 224 (emphasis in original) (quoting Ark. Const. art. 5, §1, *amended by* Ark. Const. amend. 7). To qualify for this additional time, we have held that "the petition must first, on its face, contain a sufficient number of signatures pursuant to both the state-wide and fifteen-county requirement, before the thirty-day provision to correct deficiencies applies." *Arkansas Hotels*, 2012 Ark. 335, at 10, 423 S.W.3d at 55. To that end, our inquiry is this: Did GARN's petition, at the time of filing, contain on its face a sufficient number of signatures pursuant to the statewide and fifteen-county requirement, such that the Secretary of State's grant of the thirty-day cure period was proper? We hold that it did and therefore that the grant of the cure period was proper.

Particularly instructive for purposes of our inquiry is this court's decision in *Ellis*, despite its subject being a referendum petition rather than an initiated act. In *Ellis*, the Secretary of State found the petition when originally filed to have 19,269 signatures, which was more than the required 19,025 signatures. 219 Ark. 869, 245 S.W.2d 223. It was declared sufficient; however, a few weeks later, the sponsors were notified that 268 signatures had been disqualified and a thirty-day period was allowed for the filing of additional signatures. *See id.* Within that period, the sponsors filed "petitions bearing enough names to

make the total again *prima facie* in excess of the required number of signatures." *Id*. at 870, 245 S.W.2d at 224.

In an original action to this court, the petitioners first challenged the authority of the Secretary of State to grant a thirty-day extension, asserting that the extension was intended for only the correction of typographical errors and such and did not permit the filing of new signatures. *See id*. We disagreed and held that the grant of an extension was proper. *See id*. We further observed that Amendment 7 permitted time for correction or amendment, such as an addition, if a petition was found to be insufficient following the initial submission of a sufficient number of signatures. *See id*. We concluded that the Secretary of State had found what was initially "a *prima facie* valid petition to be insufficient for want of qualified signers and allowed further time for amendment," a procedure "well within the intention of the constitution." *Id*. at 871, 245 S.W.2d at 224.

The same holds true in the instant case. The record reflects that, at the time GARN filed its petition, the required number of signatures to place an initiated act on the 2014 general-election ballot, pursuant to the statewide and fifteen-county requirement, was 62,507. Here, it was determined by the Secretary of State that the initial count of signatures submitted by GARN on July 7 was 64,133, which met the statewide and fifteen-county requirement.[6] The master likewise found that the initial count of signatures met the fifteen-county requirement and was in excess of the 62,507 signatures needed. While a number of signatures

---

[6]In its July 18 letter to GARN, the Secretary of State stated that the "total number of submitted signatures submitted and included in the initial count" of GARN's petition was 64,135.

were later disqualified by the Secretary of State after the initial count, GARN's petition contained more than the sufficient number of signatures at the time of filing and was "therefore *prima facie* sufficient." *Ellis*, 219 Ark. at 870, 245 S.W.2d at 224. Because it was prima facie sufficient, correction or amendment was permitted under Amendment 7 if the petition became insufficient after the disqualification of signatures, which it did. In accord with *Ellis* and *Arkansas Hotels*, we therefore hold that the thirty-day cure period granted to GARN was authorized.

Stephens cites this court to numerous cases in which challenges were made to the validity of a petition's signatures and affidavits; however, there is an important distinction to be made. In those cases, the challenges were made with respect to the Secretary of State's final determination certifying the measure for placement on the ballot. The sole challenge being made in this case is not whether Issue No. 5 was appropriately certified for placement on the ballot, but whether the thirty-day cure period was appropriately granted based on the Secretary of State's initial-count determination. Those are two distinct inquiries.

As already noted, we have held that to qualify for a thirty-day cure period, a petition must contain, on its face, signatures of a sufficient number to meet "the state-wide and fifteen-county requirement," and the initial count of GARN's signatures met that requirement. *Arkansas Hotels*, 2012 Ark. 335, at 10, 423 S.W.3d at 55. While Stephens would have this court hold that fraud is an appropriate consideration for purposes of the initial-count

determination, it simply is not.[7]

The initial count is just that—an initial count of the signatures submitted at the time of filing and prior to any signature verification. As *Ellis*, *Dixon*, and *Arkansas Hotels* make clear, our only concern when examining the propriety of the Secretary of State's decision to grant or not grant the cure period is whether, on the face of the petition, the signatures were of a sufficient number. That inquiry is a simple one, and it is in keeping with the object and purpose of article 5, section 1, as amended by Amendment 7, which was to "increase the sense of responsibility that the lawmaking power should feel to the people by establishing a power to initiate proper, and to reject improper, legislation." *Leigh v. Hall*, 232 Ark. 558, 566, 339 S.W.2d 104, 109 (1960) (quoting *Ferrell v. Keel*, 105 Ark. 380, 385, 151 S.W. 269, 272 (1912)). Here, GARN's petition, on its face, contained the requisite signatures of a sufficient number, and GARN therefore was entitled to the thirty-day cure period.

## II. *Timeliness of the Petition's Filing*

Stephens's second claim for relief is based on his contention that because GARN's petition was filed on July 7, 2014, it was not timely filed, because Amendment 7 requires that petitions for statewide initiated acts "shall be filed with the Secretary of State not less than four

---

[7]Indeed, the very fact that testimony and evidence were required to determine Stephens's claims of fraud and forgery belies any notion that such a consideration is relevant at the initial-count stage. Such an inquiry would far exceed the level of scrutiny appropriate for a determination of whether the petition on its face contained the sufficient number of signatures at the time of filing. That is not to say that such claims cannot be made to challenge the final determination by the Secretary of State of the petition's sufficiency for placement on the ballot, as we have certainly entertained such challenges in the past. Be that as it may, they cannot be raised to challenge the Secretary of State's initial-count determination.

months before the election at which they are to be voted upon." Ark. Const. art. 5, § 1, *amended by* Ark. Const. amend. 7. Stephens avers that Amendment 7's deadline counts backward, rather than forward, and that petitions such as GARN's should have been filed by July 3 to be considered for placement on the November 2014 general-election ballot. We recently held, however, in our decision of *Richardson v. Martin*, 2014 Ark. 429, ___ S.W.3d ___, that the deadline for petitions, such as the one at issue here, was July 7, 2014. Accordingly, Stephens's timeliness claim fails too.

Because we conclude that neither of Stephens's claims is meritorious, we deny his original-action complaint seeking to remove Issue No. 5 from the ballot. The mandate shall issue immediately.

Petition denied.

*Cox, Sterling & McClure, PLLC*, by: *David W. Sterling*;
*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*; and
*Gober Hilgers, PLLC*, by: *Michael Hilgers*, for petitioner.

*AJ Kelly*, Deputy Secretary of State, Arkansas Secretary of State, *Martha Adcock*, General Counsel, and *L. Justin Tate*, Associate General Counsel, for respondent.

*David A. Couch, PLLC*, by: *David A. Couch*;
*McMath Woods P.A.*, by: *Will Bond*;
*Alexandra Rouse*; and
*Justin Craig*, for intervenor Stephen Copley, Individually, and on Behalf of Give Arkansas A Raise Now.

*Dustin McDaniel*, Attorney General, amicus curiae in support of respondent.