HOWARD W. BRILL, Chief Justice, dissenting. There is a long-standing tension in America between the ideals of direct democracy and the rule of law. In its simplest form, rule by democracy requires that the majority gets what it wants, but the rule of law requires not only respect for certain | ^procedures but also, as we know it today, respect for those who would oppose the majority. Nowhere in Arkansas law does one see this tension as clearly as in our perennial disputes over ballots for initiatives proposing new statutes or constitutional amendments.[1] This case concerns a proposed initiated act with the popular name, The Arkansas Medical Cannabis Act, or Issue No. 7, on the November 8, 2016 general-election ballot. Sponsored by the intervenor, Arkansans for Compassionate Care 2016 (“the sponsor”), this act would legalize the medical use of marijuana and establish nonprofit cannabis-care centers to be overseen by •the Arkansas Department of Health. The majority holds that, contrary to the master’s findings, the signatures supporting the proposed act are insufficient. I would accept the master’s findings in this case and deny Benca’s petition. For this reason, I respectfully dissent. Arkansas is in the midst of the biennial season of ballot initiatives. Citizens see hundreds of thousands of dollars paid to canvassers—rwho receive five dollars a signature—feuding marijuana advocates, out-of-state individuals and interests seeking enshrinement in the 1874 Arkansas Constitution, undercover agents who videotape the gathering of signatures on petitions, and an assault on the English language by acts and .amendments of bewildering complexity that astounds students of plain English. But these activities are the mere price to be paid for the right granted to the people by the Arkansas Constitution. . Since 1920, the people of Arkansas have had a unique power that is not granted under the federal constitution. Amendment 7 gives to the people of the State of Arkansas the power |ig“to propose legislative measures, laws and amendments to the Constitution.” See Ark. Const, art. 5, § 1, amended by Ark. Const, amend. 7. Significantly, amendment 7 provides that “[i]n the event of legal proceedings to prevent giving legal effect to any petition upon any grounds, the burden of proof shall be upon the person or persons attacking the validity of the petition.” (Emphasis added.) As background, the sponsor initially submitted 117,547 signatures. In accordance with article 5, section 1' of the Arkansas Constitution, an initiative petition must contain at least 67,887 signatures of registered voters from at least fifteen counties. The Secretary of State validated 77,516 signatures. Benca challenged 17,746 signatures. If those 17,746 signatures were disqualified, then the sponsor would retain only 59,770 signatures—a number below the constitutional requirement of 67,887. This original action filed by Benca raises issues of fact. See, e.g., Roberts v. Priest, 384 Ark. 244, 973 S.W.2d 797 (1998) (per curiam). Following this court’s directive in Benca v. Martin, 2016 Ark. 301, 2016 WL 4717936 (per curiam), the Honorable John B. Robbins, whom this court appointed as master, filed an amended “Master’s Report and Findings of Fact” in which he applied the election code to the facts of the instant case. He found that Benca had proved, at' best, that only 2,087 of the 77,516 signatures should be disqualified. The duties of a master are governed by Rule 53 of the Arkansas Rules of Civil Procedure. That rale provides that this court shall accept the" master’s findings of fact unless they are clearly erroneous. See Stephens v. Martin, 2014 Ark. 442, 491 S.W.3d 451. A finding of fact is clearly erroneous, even if there is evidence to support it, when, based on the entire |2nevidence, the court is left with the definite and firm conviction that the master has made a mistake. See id. In this case, I would accept the master’s findings. Specifically, in count two, Benca argues that 8,620 signatures, which were arguably collected by paid canvassers, should have been disqualified because the sponsor failed to comply with Arkansas Code Annotated section 7-9-601. Benca contends that section 7-9-126(b)(3)(A) “mandates that none of these 8,260 signatures [should] be counted.” Section 7-9-601 pertains to the hiring and firing of paid canvassers while section 7~9-126(b)(3)(A) concerns the counting of signatures by paid’ canvassers. Applying section 7-9-601 to the facts, the master found as follows: The above requirements [of section 7-9-601] only apply to “paid” canvassers. The proof was undisputed that most of the Sponsor’s canvassers were volunteer's and many of the canvassers who had been reported as “paid,” as well as many who had checked that they were “paid,” were only to be paid if sufficient funds were contributed to the petition drive in the future. Furthermore, it was undisputed that many of these canvassers were never in fact paid. Petitioner has-not identified which of these canvassers fall into this category., Consequently, I cannot find how many, if any, of these 8,620 signatures should be disqualified. According to the master’s finding, Benca failed to prove which, if any, canvassers were paid by the sponsor. This finding is supported by testimony presented at the hearing by Melissa Fults, a sponsor of the petition from Saline County: I do want to respond [to] one thing, where they were talking about paid and then filing as volunteers. Unlike all the other initiatives that were out there, we didn’t have hundreds of thousands of dollars. So most of our people that ended up being paid canvassers were volunteers originally. And at one point, we thought we were going to get a donation. And so several said, “Yeah, put me on the list to be a paid canvasser. And when we didn’t get the money, they said, “Well, I’d rather just be a volunteer anyway.” .., [S]ome of them were [paid] before they were supposed to be paid. But most of them didn’t get paid like they were supposed to. And a.lot of them [ 21 didn’t even take the money once they were listed.... [The canvassers] wanted to get signed up as paid and then they realized we didn’t have a lot of money. And I told-.them, “No. We’ll pay you.”.Because they had been volunteers, but most of them had been volunteers since 2011. Even though we had set them up, they refused to take money and they always marked volunteer.... They signed up as a paid canvasser early on, when we thought we were going to get the funding back in December. And then when we didn’t, they refused payment and they marked volunteer on all of them because they said they weren’t going to take money.... Most of these people are patients themselves or they have family members that are patients. They have stood out in the heat and the cold and done everything they possibly could to do this gnd to do it right. And for them to care enough about this to say you’ve signed me up as a paid canvasser but I’m not going to take any money, to take their signatures away is horrible. I’m sorry. It’s just—they did it because they cared. They didn’t-do it for the money. Actually, a couple of them only became paid canvassers because the people that gave us the money said that if we didn’t get the people to take money for it and get payment, then we wouldn’t get any more money. And if you’ll look at our ethics report, a couple of them gave a. huge chunk of that money back to the campaign. Because the master found that “most of the Sponsor’s canvassers were volunteers and many of the canvassers .,. were only to be paid if sufficient funds were contributed to thé petition drive in the future,” I would hold that sections 7-9-601 and 7-9-126(b)(3)(A) pertaining to paid canvassers are wholly inapplicable to the case at bar. Thus, given our deference to the master’s findings, and given the constitutional provision expressly placing the burden of proof on-the. challengers, Benca failed to meet that burden of proof, pursuant to amendment 7. Accordingly, I agree with the master’s finding-that the 8,620 signatures challenged by Benca in count two should be counted. I would also accept the master’s report in its entirety. While the sponsor’s canvassers did make some errors in the signature-gathering process, I agree with the master’s findings that these errors are not a complete failure with regard to the sufficiency of the signatures on the petition. The proposed act should remain on the | ^ballot. The people should be permitted to vote on the initiative on November 8, and their votes- should be counted. For these reasons, I respectfully dissent. DANIELSON, J., joins.