Karen R. Baker, Associate Justice
Randy Zook, petitioner, challenges the sufficiency of a statewide-initiative petition. Respondent, the Honorable Mark Martin, Arkansas Secretary of State, certified the initiative entitled "An Act to Increase the Arkansas Minimum Wage Act," also known as "Issue No. 5," which is on the November 6, 2018 ballot. The proposed Act is sponsored by intervenor, Kristin Foster, Individually and on behalf of Arkansans for A Fair Wage ("sponsor-intervenor").
*882 Because we do not find merit in Zook's claims, we deny the petition.
Article 5, § 1 of the Arkansas Constitution governs both statewide and local initiatives and referendums. Jurisdiction to review the sufficiency of statewide initiative petitions is conferred upon this court by way of Amendment 7 to the Arkansas Constitution. See Ward v. Priest , 350 Ark. 345, 86 S.W.3d 884 (2002). Amendment 7 states that "[t]he sufficiency of all state-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes." Ark. Const. art. 5, § 1, amended by Ark. Const. amend. 7. Following certification by the Secretary of State, Amendment 7 clearly confers original and exclusive jurisdiction upon this court to review the Secretary of State's decision as to the sufficiency of the petition. See Ward , 350 Ark. 345, 86 S.W.3d 884 ; see also Stephens v. Martin , 2014 Ark. 442, at 6, 491 S.W.3d 451, 454.
The relevant history of this matter is as follows. On July 6, 2018, the sponsor-intervenor initially submitted 69,413 signatures to Martin. Martin performed an initial prima facie review and validated 68,861 signatures. On July 30, 2018, Martin notified the sponsor-intervenor that 52,124 signatures submitted were valid, and pursuant to article 5 section 1 of the Arkansas Constitution, if a petition contains 75 percent of the necessary valid signatures to be certified on the ballot, the petition qualifies for a thirty-day cure period.[1] Martin informed the sponsor-intervenor that she had earned the thirty-day cure period to submit additional signatures. On August 3, 2018, the sponsor-intervenor submitted her cure signatures for a total of 113,160 signatures, and 85,526 were valid signatures. On August 16, 2018, Martin certified the petition as sufficient for inclusion on the 2018 general-election ballot.
On September 4, 2018, Zook filed his petition with this court. In challenging the sufficiency of the initiative petition, Zook contends that the sponsor-intervenor did not submit an adequate number of signatures and the petition should not have not qualified for the cure. Zook contends that Martin improperly counted invalid petitions and signatures that qualified the sponsor-intervenor's petition for a cure and ultimately certified Issue No. 5 for the November 6, 2018 general election ballot. Accordingly, Zook contends that because the petitions submitted to Martin failed to contain the 75 percent of the number of valid signatures needed in the initial filing and she was not entitled to the cure period and, therefore, signatures obtained after July 6, 2018 should not have been counted.
On September 6, 2018, we appointed the Honorable Sam Bird as special master in this matter. The special master held a hearing on September 17-19, 2018, at which he heard testimony, heard the arguments of counsel, and received evidence.
On September 24, 2018, the special master entered his findings that the sponsor-intervenor's petition had sufficient signatures to qualify for a cure period and exceeded the minimum number of signatures (67,887) required to qualify for placement on the November 6, 2018 ballot. The parties have now filed their respective briefs in this matter. We deny the petition.
I. Standard of Review
Under our standard of review, we will accept the special master's findings *883 of fact unless they are clearly erroneous. See Roberts v. Priest , 334 Ark. 503, 975 S.W.2d 850 (1998). A finding of fact is clearly erroneous, even if there is evidence to support it, when, based on the entire evidence, the court is left with the definite and firm conviction that the master has made a mistake. Id.
On review of this challenge, we are tasked with interpreting article 5, section 1 --including amendment 93 of 2014-which amended article 5, section 1. "In interpreting the constitution on appeal, our task is to read the law as it is written and interpret it in accordance with established principles of constitutional construction. First Nat'l Bank of DeWitt v. Cruthis , 360 Ark. 528, 203 S.W.3d 88 (2005). It is this court's responsibility to decide what a constitutional provision means, and we will review a lower court's construction de novo. Id. Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. Id. Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. Id. "
Proctor v. Daniels , 2010 Ark. 206, at 5-6, 392 S.W.3d 360, 363.
II. Thirty-Day Cure Period and Verification
With these standards identified, we turn to the merits of Zook's petition. We begin with article 5 section 1, which provides, "The first power reserved by the people is the initiative. Eight per cent of the legal voters may propose any law and ten per cent may propose a constitutional amendment by initiative petition and every such petition shall include the full text of the measure so proposed." Ark. Const. art. 5, § 1. Amendment 7 amended article 5, section 1 of the Arkansas Constitution and is commonly referred to as the "Initiative and Referendum Amendment." Amendment 7 must be liberally construed in order to effectuate its purposes and only substantial compliance with the amendment is required. Kyzar v. City of W. Memphis , 360 Ark. 454, 459, 201 S.W.3d 923, 927-28 (2005) ; Porter v. McCuen , 310 Ark. 674, 839 S.W.2d 521 (1992).
Next, we review additional language in article 5, section 1, "The Petition," which provides:
Sufficiency . The sufficiency of all state-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes.
....
Amendment of Petition . (a)(1) If the Secretary of State, county clerk or city clerk, as the case may be, shall decide any petition to be insufficient, he or she shall without delay notify the sponsors of such petition, and permit at least thirty (30) days from the date of such notification, in the instance of a state-wide petition, or ten (10) days in the instance of a municipal or county petition, for correction or amendment.
(2) For a state-wide petition, correction or amendment of an insufficient petition shall be permitted only if the petition contains valid signatures of legal voters equal to:
(A) At least seventy-five percent (75%) of the number of state-wide signatures of legal voters required....
Ark. Const. art. 5, § (a)(1), (a)(2)(A) (Supp. 2017).
We now turn to Zook's petition. The crux of Zook's argument is that the sponsor-intervenor's petition should not *884 have qualified for the thirty-day cure, any signatures submitted thereafter should not have been counted, and Issue No. 5 should not be on the ballot. The sponsor-intervenor contends that she presented a prima facie case of the requisite number of signatures of legal voters to qualify her petition for the cure. Here, to qualify her petition for a thirty-day cure period, the sponsor-intervenor must have presented Martin with a petition that contains the requisite number of signatures of legal voters-67, 887 signatures upon prima facie review and 50,915 signatures to qualify for the thirty-day cure.
In Stephens v. Martin , Stephens argued that the petition in that case was not prima facie valid when it was submitted because it relied on petition parts with forged notary signatures to meet the initial-count signature threshold and therefore, the sponsor was not entitled to a 30-day cure period. We disagreed with Stephens and held that fraud was not an appropriate consideration for the initial count, and the sponsor was entitled to the thirty-day cure period. We recounted our history regarding amendment 7 and challenges to initial counts and cure periods in initiated petitions and referendums:
This court has previously considered the propriety of the Secretary of State's determination relating to the thirty-day cure period under Amendment 7. See, e.g. , Arkansas Hotels & Entm't, Inc. v. Martin , 2012 Ark. 335, 423 S.W.3d 49 (original action seeking a writ of mandamus to the Secretary of State to accept the petition); Ellis v. Hall , 219 Ark. 869, 245 S.W.2d 223 (1952) (per curiam) (interim opinion in an original action); Dixon v. Hall , 210 Ark. 891, 198 S.W.2d 1002 (1946) (original action seeking to enjoin the Secretary of State from accepting additional signatures). In Dixon , this court held that it was intended that a petition be filed within the time fixed by Amendment 7. Further, "[t]o be a petition, it must prima facie, contain at the time of filing, the required number of signatures." 210 Ark. at 893, 198 S.W.2d at 1003. The inverse of this is that the complete failure to obtain the requisite number of signatures results in the proposed measure failing for want of initiation. See id.
Stephens , 2014 Ark. 442, at 8-9, 491 S.W.3d at 455-56.
We held that Amendment 7 states that
"If the petition is found to be insufficient, time must be allowed for correction or amendment." Ellis , 219 Ark. at 871, 245 S.W.2d at 224 (emphasis in original) (quoting Ark. Const. art. 5, § 1, amended by Ark. Const. amend. 7 ). To qualify for this additional time, we have held that "the petition must first, on its face, contain a sufficient number of signatures pursuant to both the state-wide and fifteen-county requirement, before the thirty-day provision to correct deficiencies applies." Arkansas Hotels , 2012 Ark. 335, at 10, 423 S.W.3d at 55.
....
We further observed that Amendment 7 permitted time for correction or amendment, such as an addition, if a petition was found to be insufficient following the initial submission of a sufficient number of signatures. See [ Ellis , 219 Ark. at 870, 245 S.W.2d at 224 ]. We concluded that the Secretary of State had found what was initially "a prima facie valid petition to be insufficient for want of qualified signers and allowed further time for amendment," a procedure "well within the intention of the constitution." Id. at 871, 245 S.W.2d at 224.
Stephens , 2014 Ark. 442, at 9, 10, 491 S.W.3d 451 at 457.
*885 Here, as in Stephens , Zook cites cases addressing the final sufficiency regarding the validity of signatures. Further in support of this position, Zook asserts that " Stephens was decided before Act 1413 went into effect and before the passage of Amendment 93, both of which significantly changed the law governing initiatives and referenda." This argument is misplaced. First, Act 1413, Ark. Code Ann. §§ 7-9-101 et seq., specifically, the plain language of the pertinent parts of Ark. Code Ann. § 7-9-126 -currently in effect now and when Stephens was decided-is the same and has not altered our review or jurisdiction of review of the initial count.[2] Second, as discussed above, to qualify for the cure period, pursuant to Amendment 93 of 2014, the sponsor-intervenor had to submit valid signatures of legal voters equal to at least 75 percent of the number of statewide signatures of legal voters required; and at least 75 percent of the required number of signatures of legal voters from each of at least fifteen counties of the state. See Ark. Const. art 5, section 1. Accordingly, our review jurisdiction and review of the initial count is for prima facie review for signatures of legal voters. With regard to our review of the initial count and cure qualification, we are not tasked with reviewing a challenge to the final sufficiency of the petition. Rather, we look to the accuracy of the cure. Here, Zook does not challenge the validity of the signatures of legal voters. See Ark. Const. art. 5, § (a)(1), (a)(2)(A) (Supp. 2017).
As we explained in Stephens , " Ellis , Dixon , and Arkansas Hotels make clear, our only concern when examining the propriety of the Secretary of State's decision to grant or not grant the cure period is whether, on the face of the petition, the signatures were of a sufficient number. That inquiry is a simple one, and it is in keeping with the object and purpose of article 5, section 1, as amended by Amendment 7, which was to 'increase the sense of responsibility that the lawmaking power should feel to the people by establishing a power to initiate proper, and to reject improper, legislation.' Leigh v. Hall , 232 Ark. 558, 566, 339 S.W.2d 104, 109 (1960) (quoting Ferrill v. Keel , 105 Ark. 380, 385, 151 S.W. 269, 272 (1912) )." Stephens , 2014 Ark. 442, at 12, 491 S.W.3d 451, 457. Here, based on the record and the requirements of article 5, section 1, including the additional language from amendment 93 of 2014, the sponsor-intervenor's petition, on its face, contained the requisite signatures of a sufficient number and is therefore entitled to the thirty-day cure period.
Because we conclude that Zook's claims are without merit, we deny his petition. The mandate shall issue immediately.
Petition denied.
Wood and Womack, JJ., concur.
*886 Although I agree the petition should be denied, I disagree with the majority's reliance on Stephens v. Martin , 2014 Ark. 442, 491 S.W.3d 451. We are not limited, as the majority writes, to a review of "whether, on the face of the petition, the signatures were of a sufficient number." quoting Stephens , 2014 Ark. 442, at 11, 491 S.W.3d at 457. In Stephens , this court interpreted a prior version of article 5 section 1 of the Arkansas Constitution. However, amendment 93[3] revised article 5, section 1, and those revisions, particularly those to the "Amendment of Petition" section, opened the door for this court to consider issues other than simply the sufficiency of the number of signatures. Article 5, section 1 now reads that "correction or amendment of an insufficient petition shall be permitted only if the petition contains valid signatures of legal voters ...." (Emphasis added.) Consequently, our constitution now provides that a cure is available, not just based on a sufficient number of signatures, but on "valid signatures of legal voters." Id. Therefore, the majority's continued reliance on Stephens 's limited review of only the number of signatures is erroneous.
As this court wisely explained in Sturdy v. Hall , 201 Ark. 38, 143 S.W.2d 547 (1940), we must be careful in our interpretation of the constitutional provisions that vest powers in the public. Article 5, section 1 confers the ability to assemble the voting public into a general assembly or to call a constitutional convention in the hands of relatively few. Id. The last census reflected the population of Arkansas at approximately 3 million. Currently, 84,859 registered voters, or 2.8 percent of our population, may submit a constitutional amendment to the people and 67,887, or 2.2 percent of our population, may submit an initiated act. "The law must, therefore, be, and is, that if a power so great may be exercised by a number so small, substantial compliance with the provisions of the constitution conferring these powers should be required." Id. We therefore should not simply rely on old precedent that relies on prior versions of our constitution to limit our review of matters this important.
Nevertheless, I do not think that the constitution in its current form allows us to reach the petitioner's argument and decide whether the canvassers complied with residency requirements, notary issues, and other issues beyond the validity of the voters' signatures and their numeric sufficiency, for purposes of a cure. Therefore, I join in denying the petition.
Womack, J., joins.

The parties agree that 75 percent of the 67,887 signatures amounts to 50,915 valid signatures.

Even though we recognize that the law in 2014 and now are the same, we do note that in Stephens , 2014 Ark. 442, at 3, 491 S.W.3d 451, 453 n.3, we did not address the viability of Ark. Code Ann. § 7-9-126. We explained,
Although the Arkansas Code contains a statute outlining which petition parts and signatures should be counted for purposes of the Secretary of State's initial count, the Secretary of State, in a separate case, was enjoined by judgment of the Pulaski County Circuit Court from applying its provisions. See Spencer v. Martin , No. 60CV-13-4020 (Apr. 2, 2014) (judgment declaring certain provisions of Act 1413 of 2013 unconstitutional and permanently enjoining the Secretary of State from enforcing those provisions, including Ark. Code Ann. § 7-9-126 (Supp. 2013) ). At the time of the initial count in this case, the Secretary of State was operating under this injunction and was precluded from applying the provisions of section 7-9-126. We therefore offer no opinion on that statute's viability under the constitution or this court's case law.

Amendment 93 was approved at the November 4, 2014 election.